160 N.J. Super. 105 (1978)
388 A.2d 1311
CITY OF NEWARK, PLAINTIFF-RESPONDENT,
v.
COUNTY OF ESSEX ET AL., DEFENDANTS-APPELLANTS.
Superior Court of New Jersey, Appellate Division.
Argued May 16, 1978.
Decided June 7, 1978.
*106 Before Judges HALPERN, LARNER and KING.
Mr. Charles P. Cohen, Assistant County Counsel, argued the cause for defendants-appellants (Mr. Peter G. Stewart, County Counsel, attorney).
Mr. John C. Pidgeon, Assistant Corporation Counsel, argued the cause for plaintiff-respondent (Mr. Salvatore Perillo, Corporation Counsel, attorney).
The opinion of the court was delivered by LARNER, J.A.D.
In an opinion reported at 144 N.J. Super. 566 the trial court decided that the County of Essex is liable to the City of Newark in the sum of $425,511.67 for reimbursement of expenses incurred by the city for overtime pay to police and firemen for services rendered in connection with riots occurring between September 1 and 14, 1974. The legal basis for the city's claim is derived from N.J.S.A. 2A:48-4, a section of Article I of Chapter 48, entitled "Mobs and Riots."
This section provides:

2A:48-4. Protection of property; expenses

The mayor or officer or sheriff shall, upon receiving the notice, take all legal means to protect the property attacked or threatened. The expenses incurred by any of such officers in the performance of any duty hereby imposed shall be paid by the county treasurer of the county in which the property is situate, upon the approval thereof by a judge of the county court of such county.
*107 In construing this statute as a component part of the entire article, the trial judge sitting without a jury made a factual determination that riot or series of riots took place in the City of Newark over the period of September 1 to 14, 1974 in which there ensued damage to private property. The evidence in the record amply supports this finding. And as we view this appeal, our consideration of the propriety of the judgment turns upon the meaning and intent of the aforesaid legislation and its applicability herein.
As far as we can determine there has been no other litigation between a municipality and a county in this State under this section of the act and no judicial expression relating to the right of reimbursement from a county for expenses incurred in riot protection.[1] By the same token, there are no available aids by way of legislative statements or other historical material which might reveal the purpose or intent of the Legislature in adopting this particular section of the act. We therefore undertake to analyze this provision in the context of the overall chapter dealing with "Mobs and Riots" in order to arrive at a rational legislative purpose and intent in authorizing recovery of incurred expenses by "the mayor or officer or sheriff" from "the county in which the property is situate."
It is undeniable from the historical development of this legislation and its very terms that the statutory section in question cannot be viewed in isolation. It must be construed as but a part of Article I (N.J.S.A. 2A:48-1 to 7) which creates a cause of action against certain governmental entities for property damage caused by a riot.
As noted in A & B Auto Stores v. Newark, 59 N.J. 5, 12 (1971), this legislation was initially adopted in this State in *108 1864 (L. 1864, c. 150 at 237-239), patterned after similar statutes in New York and Pennsylvania.[2] The act of 1864 did not contain a provision relating to recovery of expenses from the county, but in substance included all the provisions relating to property damage recovery which have been carried down in the legislation to date.
It was not until 1903 that the Legislature amended section 7 of the 1864 act to include a provision for the recovery of expenses by a mayor or sheriff from the "county collector" upon approval of the court. Significantly, however, that provision was incorporated in a single paragraph #7 which covered in substance multiple aspects of the legislation as presently contained in N.J.S.A. 2A:48-3 and 4. The amendment of 1903 read as follows:
7. No person or corporation shall be entitled to recover in any such action if it shall appear upon the trial thereof that such destruction or injury of property was occasioned, or in any manner aided, sanctioned or permitted by the carelessness or negligence of such person or corporation; nor shall any person or corporation be entitled to recover any damages for any destruction or injury of property as aforesaid, unless such party shall have used all reasonable diligence to prevent such damage, and shall have notified the mayor of such city, or the sheriff of such county, immediately after being apprised of any threat or attempt to destroy or injure his or their property by any mob or riot of the facts brought to his knowledge; and upon the receipt of such notice it shall be the duty of such officer to take all legal means to protect the property attacked or threatened, and the expenses incurred by said officer in the performance of his duty as aforesaid shall be paid by the county collector of the county in which said property is situate, upon the approval of the judge of the court of common pleas of said county. [L. 1903, c. 159 at 243]
The act remained in this form until the general revision of the New Jersey statutes in 1937 (L. 1937, c. 188 at 832) when the revisers deemed it appropriate to modify the language *109 and subdivide the sections of the legislation in a different manner. R.S. 2:63-1 to 9. As a consequence, former section 7 became R.S. 2:63-5 and 2:63-6, with the latter section containing the substance of current N.J.S.A. 2A:48-4. The correlation between sections 5 and 6, however, was maintained by the cross-reference in section 6 to the "notice mentioned in section 2:63-5." Interpolating this cross-reference into our current statutes, N.J.S.A. 2A:48-4 would read "The mayor or officer or sheriff shall, upon receiving the notice [mentioned in section 2A:48-3] take all legal means to protect the property attacked or threatened. The expenses incurred by any of such officers * * *."
In the final compilation in 1939, R.S. 2:63-5 became N.J.S.A. 2A:48-3 and R.S. 2:63-6 became N.J.S.A. 2A:48-4. The latter section no longer contains a specific reference back to section 3, and there are some minor changes in language which are not significant on the issue at hand. It is manifest, however, that the latest revision and consolidation, edited by West Publishing Co., was not intended to modify the meaning or content of the Revised Statutes of 1937. As the Preface to N.J.S.A. points out: "New Jersey Statutes Annotated (cited N.J.S.A.) conforms exactly in text and arrangement to the Revised Statutes of 1937."[3]
From the foregoing legislative history it is unmistakable that the section 4 (N.J.S.A. 2A:48-4) provision for expense reimbursement is but a corollary of the duty of the mayor, chief executive, chief of police or the sheriff to "take all legal means to protect the property attacked or threatened upon receiving the notice from the claimant (property owner) as required in section 3 (N.J.S.A. 2A:48-3)."
It would thus appear that the reimbursement provision does not come into play unless the conditions of section 3 have been invoked, i.e., where a property owner has notified *110 the sheriff or local officer of a threat or attempt to destroy or injure his property and such officer has expended moneys in protecting that property.
We cannot ascribe to the Legislature from the foregoing statutory language the intention to grant to a municipality a right to reimbursement from the county for all expenses incurred in controlling or quelling a riot. In the absence of clear and unequivocal language in the statute, we find no justification in reason or logic to expand the limited legislative provision for reimbursement to the individual officer who undertakes the emergent duty of protecting a particular piece of property after the requisite notice into a general right of reimbursement to the municipality for its police and fire-fighting expenses incurred in quelling a riot. See Wells Fargo & Co. v. Mayor of Jersey City, 207 F. 871, 875 (D.N.J. 1913), aff'd 219 F. 699 (3 Cir.1915).
Just as ordinary police and fire protection is an expense which must be borne by the taxpayers of the City of Newark, so must the expenditures for such service be borne by the city taxpayers when occasioned by a riot or riots in that municipality. In the absence of a clear legislative mandate it is inappropriate to shift that expense to all the taxpayers of the county.
The record fails to present evidence of the section 3 preconditions to reimbursement for expenses, for there is no showing that there was any particular expenditure for protection of a resident's property after notice of a threat to destroy or injure the same. In fact, the city's case was premised simply upon a showing that there was a riot, that property in general was damaged, and that the city paid overtime wages over and above normal expenditures to police and firemen engaged in varied activities required to quell and control the riot and its aftermath.
Included in these activities were efforts to "quell" the riots, avoid injury to persons, provide protection of public and private property, undertake general police activities involving detection and prevention of crimes and arrest of offenders, *111 fight fires in various sections of the city and perform all other functions normally undertaken by police and firemen. Absent from the record is any evidence of the causal connection between any expenditure and the protection of one or more specific private properties pursuant to notice from claimants whose statutory action to recover relates to "destruction of," or "injury to" private property, real or personal. N.J.S.A. 2A:48-1. Unless the expenditure is by the mayor or chief executive officer or chief of police in protecting a particular property pursuant to notice of a threat thereto, there is no warrant for general reimbursement to the city of expenses to control a riot or its consequences.
In addition to the foregoing basis for denial of liability a close scrutiny of the interrelationship between all sections of the Article involved herein lends support for the conclusion that a city such as Newark is not encompassed within the class entitled to reimbursement under section 4.
As we have observed, the latter section is dependent upon and consequent to the right of action granted to claimants for property damage caused by riots in N.J.S.A. 2A:48-1. This section of the act imposes liability upon a municipality such as Newark where it has a paid police force, and upon the county in which the property is situated where the municipality does not have a paid police force. In this manner the Legislature allocates responsibility for riot damage to every municipality which is large enough to maintain a paid police force and which presumably has the resources to control or prevent riots and to pay for resulting damage. If its failure to provide protection results in damage to private property it is deemed fair and equitable to assess the loss against the taxpayers of that municipality. See A & B Auto Stores v. Newark, supra, 59 N.J. at 24. This duty to compensate the innocent property owner represents a modern counterpart of the English statute which provided for the assessment of damages suffered by the victim against all the inhabitants of the governmental unit known as a "hundred." *112 Statute of Winchester, 13 Edw. I. Stat. 2, c. 2 (1285), reenacted by 28 Edw. III, c. 2 (1354); 27 Eliz., c. 13 (1585). See A & B Auto Stores, supra, 103 N.J. Super. at 579; see also, A & B Auto Stores, supra, 59 N.J. at 15; Manzo v. Plainfield, 107 N.J. Super. 303, 305-306 (Law Div. 1969), aff'd in part and mod. in part, 59 N.J. 30 (1971); Chicago v. Sturges, 222 U.S. 313, 323, 32 S.Ct. 92, 56 L.Ed. 215 (1911).
Where, however, the municipality does not have a paid police force and is thus without the financial and manpower resources to cope with a riot or to respond to a damage claim, the Legislature saw fit to shift liability to the county.
In our opinion this dichotomy between the liability of a city and a county is carried through all of Article I, including section 4 relating to expense reimbursement. It is reasonable to conclude that if the Legislature obligated a city with a paid police force to pay for property damage resulting from a riot, it also intended that such a city assume the costs incurred in quelling or controlling the riot. It would defy reason to assume that the substantial burden of liability for property damage would be imposed upon the city while the lesser expense of policing the city in connection with a riot would be shifted to the county.
What is more reasonable and logical is that the Legislature intended that the governmental entity responsible for the property damage would also be responsible for expenses incurred in controlling and quelling the riot, and that a city with a paid police force would not be able to recover its police or fire protection expenses from the county in which it is located.
It would follow, therefore, that the expenses incurred by the mayor, chief executive officer or chief of police of a municipality within the context of section 4 refers only to such officials in a municipality which does not have a paid police force. Since riot damage to property in such a municipality is compensable by the county, the incidental expense incurred by these small municipalities in their effort *113 to cope with the emergency is also assessable against the county. Conversely, in the case of the City of Newark, a municipality with a paid police force, its riot control expenses must be borne by its taxpayers and not by those of the county.
We recognize that the foregoing construction is not discernible from the literal language of section 4. Nevertheless, we are satisfied that it is the sensible and reasonable interpretation of the legislative intent. In arriving at our conclusion we have adopted the oft-cited rule of statutory construction which holds that the purpose and reason for the legislation, considered as an integrated whole, should control rather than its literal terms. See Loboda v. Clark Tp., 40 N.J. 424, 435 (1963); Schierstead v. Brigantine, 29 N.J. 220, 230-231 (1959); Westinghouse Elec. Corp. v. Board of Review, 25 N.J. 221, 226-227 (1957); Palkoski v. Garcia, 19 N.J. 175, 181 (1955); Caputo v. The Best Foods, 17 N.J. 259, 264 (1955).
In Alexander v. N.J. Power & Light Co., 21 N.J. 373 (1956), the court aptly summarized the judicial function in construing legislative enactments:
The statute is to receive a reasonable construction, to serve the apparent legislative purpose. The inquiry in the final analysis is the true intention of the law; and, in the quest for the intention, the letter gives way to the rationale of the expression. The words used may be expanded or limited according to the manifest reason and obvious purpose of the law. The spirit of the legislative direction prevails over the literal sense of the terms. The particular words are to be made responsive to the essential principle of the law. When the reason of the regulation is general, though the provision is special, it has a general acceptation. The language is not to be given a rigid interpretation when it is apparent that such meaning was not intended. The rule of strict construction cannot be allowed to defeat the evident legislative design. The will of the lawgiver is to be found, not by a mechanical use of particular words and phrases, according to their actual denotation, but by the exercise of reason and judgment in assessing the expression as a composite whole. The indubitable reason of the legislative terms in the aggregate is not to be sacrificed to scholastic strictness of definition or concept. Wright v. Vogt, 7 N.J. 1 (1951). It is not the meaning of isolated words, *114 but the internal sense of the law, the spirit of the correlated symbols of expression, that we seek in the exposition of a statute. The intention emerges from the principle and policy of the act rather than the literal sense of particular terms, standing alone. [at 378-379]
And finally, we are mindful of the famous remark of Judge Learned Hand in Guiseppi v. Walling, 144 F.2d 608, 624, 155 A.L.R. 761, 780 (2 Cir.1944), aff'd sub nom. Gemsco v. Walling, 324 U.S. 244, 65 S.Ct. 605, 89 L.Ed. 921 (1945):
There is no surer way to misread any document than to read it literally. * * *
Based upon the foregoing analysis of the applicable legislation we conclude that there is no legal warrant for the determination by the trial court. The judgment in favor of the City of Newark is reversed and remanded for entry of judgment in favor of the County of Essex.
NOTES
[1] For cases dealing with the other sections of the act pertaining to the liability of a municipality or county for damage to private property, see A & B Auto Stores v. City of Newark, 103 N.J. Super. 559 (Law Div. 1968), 106 N.J. Super. 491 (Law Div. 1969), aff'd in part and modified in part. 59 N.J. 5 (1971).
[2] Neither New York nor Pennsylvania has a parallel provision for reimbursement for expenses as contained in N.J.S.A. 2A:48-4.
[3] This statement is inaccurate, since there are some editorial changes.