CITY OF NEWARK, PLAINTIFF-APPELLANT, v. COUNTY OF ESSEX, *ET AL.*, DEFENDANTS-RESPONDENTS.

Argued January 8, 1979—Decided May 30, 1979.

Mr. *John C. Pidgeon,* Assistant Corporation Counsel, argued the cause for appellant (*Mr. Salvatore Perillo,* Corporation Counsel, attorney).

Mr. *Charles P. Cohen,* Assistant County 'Counsel, argued the cause for respondents (*Mr. Peter G. Stewart,* Essex County Counsel, attorney).

The opinion of the court was delivered by

MOUNTAIN, J. The City of Newark brought suit against the County of Essex, seeking reimbursement for overtime payroll expenses for police and firemen incurred by Newark during riots which took place between September 1 and 14, 1974. The trial court found in favor of the plaintiff and entered judgment in the amount of $425,511.67. 144 *N. J. Super.* 566 (Cty. Ct. 1976). On appeal the Appellate Division reversed, holding that plaintiff had failed to establish a cause of action. 160 *N. J. Super.* 105 (App. Div. 1978). We granted certification. 78 *N. J.* 333 (1978).

The resolution of this issue requires a careful analysis and interpretation of the Mobs and Riots Act, *N. J. S. A.* 2A:48–1 to 48–7.

The fundamental purpose of this statute is to provide reimbursement from public funds for property damage suffered by individual property owners due to riots. The first section of the enactment, *N. J. S. A.* 2A:48–1, places the obligation for such reimbursement upon the municipality where the riot occurs, provided "it has a paid police force." Otherwise the obligation is that of the county in which the disturbance takes place.

Perhaps because of the potentially heavy exposure, the statute imposes a series of protective conditions which must

be met before a claimant becomes entitled to payment for damage he has suffered.

In the first place, recovery is limited to $10,000 for the "aggregate of damage . . . at each separate location." *N. J. S. A.* 2A:48–1. Furthermore, to the extent that a property owner has insurance protection he may not recover, at least to the extent he is reimbursed by his insurer. *Id.; Green v. City of Newark,* 61 *N. J.* 460 (1972). Nor may an insurer exercise any right of subrogation. *N. J. S. A.* 2A:48–1.

Secondly, the statute of limitations is very short. An action must be brought on a claim "within 3 months after the loss of or injury to the property." *N. J. S. A.* 2A:48–2.

Further, if

> . . . the destruction of or injury to the property was occasioned or in any manner aided, sanctioned or permitted by the negligence of the claimant, there shall be no recovery. Nor shall a recovery be had unless the claimant used all reasonable diligence to prevent the destruction or injury. . . . . [*N. J. S. A.* 2A:48–3]

Thus the claimant must affirmatively establish not only that no negligence on his part contributed to the damage, but also that he exerted himself in every reasonable way to avert the destruction or injury.

Finally, the claimant must give timely notice to a designated public official of the threat to his property. The pertinent portion of the enactment reads,

> Nor shall a recovery be had unless the claimant . . . . shall have, immediately after being apprized of a threat or attempt to destroy or injure his property by a mob or riot, notified the mayor or chief executive officer or chief of police of the municipality or the sheriff of the county, as the case may be, of the facts brought to his knowledge. [*N. J. S. A.* 2A:48–3]

Several things are clear. The Legislature intended, at least to a limited extent, to reimburse property owners for

damage or injury to property caused by mob violence or riots. Relief was to be made available from public funds. If the disturbance were to occur in a municipality with a paid police force, then that municipality would be required to bear the expense. Absent a paid police force, the obligation was to be that of the county. Finally, as is set forth above, only those claimants who met and fulfilled the conditions we have enumerated could recover.

It is with this legislative scheme before us, that we consider the particular statutory provision upon which Newark relies in its action against Essex County. It reads as follows:

The mayor or officer or sheriff shall, upon receiving the notice, take all legal means to protect the property attacked or threatened. The expenses incurred by any of such officers in the performance of any duty hereby imposed shall be paid by the county treasurer of the county in which the property is situate, upon the approval thereof by a judge of the county court of such county.

[*N. J. S. A.* 2A:48-4]

This statute will be seen to have a rather limited application. It has nothing at all to do with making payments directly to property owners whose property has been damaged. Rather, within limitations to be discussed, it affords a municipality a right to indemnification from the county. It directs that certain public officers be reimbursed by the county for certain expenses to which they may have been put. These expenses are limited to those incurred "in the performance of any duty hereby imposed." The only "duty" to which this can refer is that set forth earlier in the same statutory provision, to "take all legal means to protect the property attacked or threatened." And this duty comes into play only ". . . upon receiving the notice . . . ." The "notice" is that set forth in *N. J. S. A.* 2A:48-3 quoted above. Here the City claims that one or more of the officers named in the statute had the required notice, although it was apparently not conveyed by, or on behalf of, any particular property owner. Newark points out that the mayor himself

was present shortly after the disturbance commenced and was thereafter kept informed of all developments. We agree that the notice requirement must not be interpreted so technically as to defeat the purposes of the legislation. We intimated as much in *A. & B. Auto Stores of Jones St., Inc. v. Newark,* 59 *N. J.* 5, 29 (1971). *See also* Note, "Compensation for Victims of Urban Riots," 68 *Colum. L. Rev.* 57, 70 (1968). There is sufficient evidence in the record to support the trial court's factual finding that the City had "actual notice of this threat." 144 *N. J. Super.* at 575.

■■ However, we read the statute to require at least some correlation between the particular property threatened and the expense of protecting it. It is only with respect to such an outlay that the county may be called upon for reimbursement.[1] The duty imposed by the statute, *N. J. S. A.* 2A:48–4, cannot be read as being any more extensive. Here there is a complete failure of proof that expenses were devoted to the protection of any particular property—even proof of the most generalized nature.

Our reading of the statute substantially accords with that of the Appellate Division when it observed that

> [w]e cannot ascribe to the Legislature from the foregoing statutory language the intention to grant to a municipality a right to reimbursement from the county for *all* expenses incurred in controlling or quelling a riot. In the absence of clear and unequivocal language in the statute, we find no justification in reason or logic to expand the limited legislative provision for reimbursement to the individual officer who undertakes the emergent duty of protecting a particular piece of property after the requisite notice into a general right of reimbursement to the municipality for its police and fire-fighting expenses incurred in quelling a riot. [160 *N. J. Super.* at 110]

---

[1]This case does not require us to decide whether the City of Newark is, or might be, entitled to alternative or supplemental reimbursement from State funds under the provisions of the Emergency Services Act of 1972. L. 1972, c. 133, codified at *N. J. S. A.* 52: 14E–1 to 10. We, therefore, express no opinion on this issue.

Another ground upon which the Appellate Division rested its decision in favor of the County was that, when read as a whole, the Mobs and Riots Act makes no provision for county reimbursement to any municipality having a paid police force. Newark, of course, has such a force. We neither adopt nor reject this argument, noting only that it is persuasively presented and is not without appeal.

The judgment of the Appellate Division is affirmed.

PASHMAN, J., dissenting. I dissent. *N. J. S. A.* 2A:48–4 is part of a comprehensive legislative plan specifically designed to equitably apportion the expenses associated with general riots among counties, municipalities and individual property owners. Notwithstanding, the majority today construes that statute so that its provisions will not be applicable when a general riot — as opposed to an isolated instance of propery damage — occurs. The majority's intimation that reimbursement may be conditioned upon receipt by municipal officials of "actual" notice with respect to particular properties defeats a primary purpose of the Act. Such a reading of *N. J. S. A.* 2A:48–4 contravenes the intention of the Legislature and the sound public policy underlying the passage of the Act. Consequently, it cannot be accepted.

I

In *A & B Auto Stores v. Newark,* 59 *N. J.* 5 (1971), this Court, speaking through Chief Justice Weintraub, reviewed both the history and workings of *N. J. S. A.* 2A:48–1 *et seq.* Initially adopted by the Legislature in 1864, the statute was a direct response to " 'the draft riots of New York in 1863, when an entire army corps was withdrawn from the front * * * to hold in check the rebellious elements of that city.' " *Id.* at 12 (quoting from *County of Allegheny v. Gibson,* 90 *Pa.* 397, 418 (Pa. Sup. Ct. 1879)). As Chief Justice Weintraub noted, the main objective of the Act "was to spread the burden of [the damage ensuing from riots and mob action] among the citizens of a municipality * * * and this

upon a policy decision that it is just to spread the losses [caused by] mob and riot disorders." *Id.* at 15. As such, the *A & B Auto Stores* Court deemed the Act's provisions applicable to property damage caused by the many tumultuous disturbances of the peace in the 'Central, South, West and North Wards of the City of Newark which 'occurred between July 12 and 17, 1967.

*A & B Auto Stores* also establishes that a property owner will not be denied reimbursement for the damage to his property merely because he fails to give the appropriate official prior notice of a threat to that property. Instead, we recognized that the purpose of the notice provision is solely that of alerting the city that a riot is threatened so that preventive steps may be taken before property is actually destroyed. Consequently, we held that lack 'of notice would constitute a defense to reimbursement only if a municipality "succeeded in showing that [the property owner] knew something material which [the municipality] did not know or that notice from a [property owner] . . . [would] have had [an] impact upon" the municipality's ability to prevent damage to the property. 59 *N. J.* at 29. Thus, we clearly realized that to precondition recovery upon the giving of notice where notice would serve no useful function would elevate form over substance. Courts in other jurisdictions construing similar statutory schemes have agreed. *See, e. g., Roy v. Hampton,* 108 *N. H.* 51, 226 *A.* 2d 870 (Sup. Ct. 1967); *Feinstein v. City of New York,* 157 *Misc.* 157, 283 *N. Y. S.* 335 (Mun. Ct. N. Y. C. 1935); *Newberry v. Mayor of New York,* 31 *N. Y. Super. Ct.* (1 Sweeny) 369 (1869); *County of Allegheny v. Gibson, supra,* 90 *Pa.* 397, 35 *Am. Rep.* 670 (Sup. Ct. 1879). *See generally Note,* "Compensation for Victims of Urban Riots," 68 *Colum. L. Rev.* 57, 70 (1968); 18 *McQuillin,* "Municipal Corporations," § 55.149 at 539 (3d Ed. 1977); *Annot.,* "Municipal Liability for Property Damage Under Mob Violence Statutes," 26 *A. L. R.* 3d 1198, 1238–1240 (1969).

Although *A & B Auto Stores* focused on the issue of municipal liability for property damage, its reasoning is equally applicable in settings such as the present where municipalities seek reimbursement from the county for extra expenses incurred in order to prevent that property damage. The two sections are part of a unified act and must be read in conjunction. Indeed, the majority admits as much. See *ante* at 147–148. Consequently, Newark is entitled to the reimbursement it now seeks.

The very wording of the statute supports this result. *N. J. S. A.* 2A:48–4 provides that the expenses incurred by a municipality "in the performance of *any* duty hereby imposed shall be paid by the county treasurer. * * *" (Emphasis supplied.) It would make no sense to read this language as being confined solely to the duty arising when a property owner gives notice of a threat to his property and the municipality responds thereto. The discharge of such a duty relative to individual property owners is assuredly included in the larger responsibility owed to all residents confronted with a riotous situation. Under *A & B Auto Stores, supra,* Newark clearly has a governmental responsibility in the exercise of its police powers to protect its citizenry and to prevent damage to all properties located within the city. Inasmuch as the expenses it incurred were in the fulfillment of that broad and all encompassing duty, the statute by its clear language entitles the municipality to recover from the county.

The majority avoids reaching such a logical conclusion by noting that "there is a complete failure of proof that expenses were devoted to the protection of any *particular* property." See *ante* at 148 (emphasis supplied). It thus ignores the primary consideration, discussed above, that the municipality had a duty to protect *all* threatened property once it was aware of the widespread nature of the riot. Moreover, the majority's construction of the statute is unworkable. By reading the statute to allow reimbursement only for the protection of specific, individual properties, the majority

apparently envisions that police officers sent to combat riots will be equipped with a notebook and pencil so that they can jot down the addresses of the particular pieces of property that they are protecting. A statutory construction which leads to unworkable results must be avoided.

Thus, the majority in this case has successfully rendered the reimbursement provisions of this Act devoid of any practical significance. Moreover, its apparent insistence upon "actual" notice from individual property owners may encourage municipal officials to delay undertaking preventive measures until they are given the necessary notification and even then to concentrate their efforts on the particular pieces of property for which notice is received. Only thus may they be recompensed for their expenses. Because the majority's formulation renders nugatory the statutory provisions and may, if followed literally, discourage prompt governmental responses to riot contrary to sound public policy, I cannot subscribe to its interpretation.

## II

The majority does not reach the second ground for denial of reimbursement asserted by the Appellate Division — that municipalities having a paid police force are not entitled to be recompensed. My learned colleagues do, however, note in *dictum* that the contention "is persuasively presented and is not without appeal." See *ante* at 149. Inasmuch as I conclude that the majority's analysis of the first issue is flawed, I am impelled to address the second ground.

The Appellate Division, although admitting that its construction of the statute was "not discernible from the * * * language" of the Act, nevertheless concluded that a city such as Newark, which has its own paid police force, "is not encompassed within the class entitled to reimbursement * * *." *City of Newark v. County of Essex,* 160 *N. J. Super.* 105, 111, 113 (App. Div. 1978). It reasoned that because cities with paid police forces are liable for property damage

resulting from riots, the Legislature must have also intended to impose upon them the expenses incurred in quelling such disturbances.

As a preliminary observation, it should be noted that the Appellate Division's interpretation of the Act essentially reads the reimbursement provision right out of the statute. Under its formulation, only municipalities having no paid police force are entitled to reimbursement. Yet, such townships will not likely incur any expenses for which reimbursement will be necessary.

More importantly, the very words of the statute contradict the Appellate Division's conclusion. The reimbursement section provides that

[t]he mayor or officer or sheriff shall, upon receiving the notice, take all legal means to protect the property attacked or threatened. The expenses incurred by any such officers in the performance of any duty hereby imposed shall be paid by the county treasurer of the county in which the property is situate. * * *

[N. J. S. A. 2A:48–4]

This provision makes no distinction dependent upon the existence of a paid police force. In contrast, N. J. S. A. 2A:48–1, imposing liability for property damages, clearly distinguishes between townships having a paid police force and those lacking one. It is difficult to believe that the Legislature, having carefully drawn this dichotomy in one section, could have unintentionally and unartfully omitted it in another.

Moreover, a careful reading of the various provisions of the entire legislative scheme buttresses the conclusion that the Legislature did not intend to exclude cities such as Newark from reimbursement. N. J. S. A. 2A:48–3 requires that notice be given to "the mayor or chief executive officer or chief of police of the municipality or the sheriff of the county, *as the case may be.* * * *" (emphasis supplied.) This provision clearly envisions that notice will be given to an official of the entity which will be liable for any ensuing

property damage. Thus, in the case of a municipality lacking a police force, the notice should properly go to the county sheriff rather than a township official. The sheriff, however, would not be in need of reimbursement by the county, as the funds he would be expending would be county monies. Hence, unless the statute is to be rendered meaningless, it must be considered to encompass cases where the municipality does possess a paid police force.

The Appellate Division's reluctance to accept this natural reading of the reimbursement provision is perhaps due to its inability to perceive a policy basis for distinguishing between a municipality's liability for property damage and its responsibility for the costs incurred in protecting that property. Consequently, it concluded that the Legislature must have intended townships with paid police forces to bear the burden of both expenses. Contrary to its opinion, however, such a policy basis does indeed exist.

In *A & B Auto Stores v. Newark, supra,* we noted three justifications for the statutory scheme: (1) "to deter riots by subjecting the rioters and their neighbors * * * to the tax burden ensuing upon a riot," (2) "to induce vigilance within the community," and (3) "to spread the burden of those criminal events among the citizens * * * and this upon a policy decision that it is just to spread the losses of the phenomenon of mob and riot disorders." 59 *N. J.* at 14–15. These rationales clearly support a distinction between liability for damages and the responsibility for expenses.

As noted, one of the three justifications for the scheme is to induce municipal vigilance. A municipality which must bear the costs of riot damages will have an added incentive to prevent or reduce them. Only municipalities with paid police forces, however, possess the resources and ability to mitigate or circumscribe property losses attendant upon a riot, and thus only they are subjected to liability for property damages. *See A & B Auto Stores, supra,* 59 *N. J.* at 15. However, the Legislature surely recognized that a municipality in containing a riot benefits not only its own inhabi-

tants, but also persons living in nearby areas. It thus ordained that although property damage costs would be borne by the municipality, the expenses associated with quelling the riot should be shared by all inhabitants of the county. While the Legislature could well have required property losses as well as expenses stemming from a riot be borne by the county or even the State, rather than the municipality, it was entirely within the legislative competence to provide reimbursement for one rather than both items.

Practical considerations also underlie the dichotomy. A township's liability for ensuing property damage will dampen to a certain extent any tendency to be less than vigorous in responding to a riot. However, if the municipality is to be reimbursed for its expenses, it will have even further reason to devote all of its resources and energies toward preventing and containing riots.

Therefore, I would reverse the Appellate Division and reinstate the judgment of the trial court.

Justice HANDLER joins in this opinion.

*For affirmance*—Chief Justice HUGHES and Justices MOUNTAIN, CLIFFORD and SCHREIBER—4.

*For reversal*—Justices PASHMAN and HANDLER—2.