174 N.J. Super. 386 (1980)
416 A.2d 935
JOHN P. GILLEN, PLAINTIFF,
v.
WALTER N. SHEIL, PETER J. DINARDO AND JAMES F. QUINN, HUDSON COUNTY CLERK, DEFENDANTS.
Superior Court of New Jersey, Law Division Hudson County.
Decided May 8, 1980.
*388 Libero D. Marotta, for plaintiff.
Harold J. Ruvoldt, Jr., for defendants Walter N. Sheil and Peter J. DiNardo (Ruvoldt & Ruvoldt, attorneys).
Francis P. Morley, County Counsel, for defendant James F. Quinn, Hudson County Clerk.
BILDER, J.S.C.
This is an action to enjoin individuals who hold the position of chairman of county and municipal Democratic committees[1] from participating in primary elections for public office. It raises the unyet passed upon question of the application of N.J.S.A. 19:34-52 to individuals.
Plaintiff John P. Gillen and defendant Peter J. DiNardo are rivals in the June 3, 1980 primary election for the Democratic party nomination for the office of sheriff of Hudson County. Defendant Walter N. Sheil is the chairman of the Hudson County Democratic Committee. Gillen is the incumbent sheriff; DiNardo apparently enjoys the support of Sheil.
Plaintiff contends that Sheil, in his role as chairman, by the use of a selection committee and through public statements and speeches, instigated and supported the candidacy of DiNardo and has, by marshalling Democratic ward leaders, municipal chairmen, and elected officials, caused the Democratic organization to support the candidacy of DiNardo  all in violation of *389 N.J.S.A. 19:34-52, a statute barring committee endorsement of primary candidates. Plaintiff seeks to remove Sheil as county chairman; to enjoin Sheil and the municipal chairmen from using party assets or making public statements in support of DiNardo or from publishing any material claiming DiNardo to be the candidate of the regular Democratic organization; to enjoin Sheil and the municipal chairman from active participation in the primary election campaign; to enjoin Sheil, the municipal chairmen and the committees from endorsing or participating in the DiNardo primary campaign, and to remove DiNardo's name from the ballot on the ground that his nomination to the primary was accomplished by the claimed statutory violation  that it was the fruit of legislatively proscribed political activity.[2]
In a second count plaintiff contends that defendant DiNardo's name will be bracketed with other "regular organization" candidates and that such bracketing is not authorized by law in the absence of a joint nominating petition or primary in which there is more than one candidate to be elected to the same office or at least two county offices for which there are candidates. DiNardo was nominated on his own petitions, and sheriff is the only county office to be filled at the next general election. Plaintiff seeks an order enjoining defendant James F. Quinn, the county clerk, from bracketing the candidates for sheriff with other candidates and to require a random drawing for positions of the sheriff candidates on the ballot.

I
N.J.S.A 19:34-52 provides:
No state, county or municipal committee of any political party shall prior to any primary election indorse the candidacy of any candidate for a party nomination or position.
It has been held to bar a county committee from creating a screening committee to select primary candidates. Cavanagh v. Morris Cty. Democratic Comm., 121 N.J. Super. 430 (Ch.Div. *390 1972). Its application to the individuals who comprise a political committee has not been judicially examined. The Attorney General has, however, expressed a formal opinion that the legislative bar is limited to the committee as such and does not affect individual activity.
Individual members of a party committee are not subject to a similar prohibition on pre-primary endorsements  the emphasis on members qua members being on the individual right of free expression under the First Amendment to the Constitution of the United States. Where such committee members consort to individually and collectively endorse a candidate, it seems clear, however, that the alter ego doctrine of the Cavanagh opinion would prohibit such activity.
Therefore, you are advised that political party committees or subcommittees thereof are prohibited from endorsing candidates prior to the primary election but that an individual member of a party committee is free to express individually his or her own preference. [Atty. Gen. F.O. 7B 9 (1977)]
I believe the position of the Attorney General to be correct. In N.J.S.A. 19:34-52 the Legislature is talking about the party mechanism  not to individual persuasion. They are talking about the use of party funds and organization  not about the expression of personal views. While it may be true that the views of a party chairman may carry more weight because of his position, mere weight of persuasion ought not to be enough to create a First Amendment disability. Though it may be that a party chairman  whether of a state, county or municipal political committee  may be deprived of his or her First Amendment rights in the face of the clearest of compelling needs, see In re Gaulkin, 69 N.J. 185, 191 (1976), one ought not to infer such a disability in the absence of an express and unequivocal legislative mandate.
In the instant case I cannot find that plaintiff has borne the burden of showing committee activity. The activities complained of are all the activities of individuals taken outside the umbrella of the committee structure. While there does exist a certain identity of interest between those backing DiNardo and the membership of those political committees, it is by no means identical and is as easily explained by mutual political self-interest as by a subterfuge to avoid the statutory injunction. An alter ego finding such as would impinge upon First Amendment rights should be made only on the clearest and most compelling evidence.

*391 II
Candidates of similar political view in general elections may group themselves together on the ballot under a common designation  thus, for example, the generally familiar Republican and Democratic lines. Candidates of similar political belief may similarly group themselves in primary elections although obviously not by political party since it is the party nomination that they are seeking. The Legislature has created two mechanisms in order to make this grouping possible: first, the filing of joint petitions where candidates are running for offices which permit of common filing with the same filing official, N.J.S.A. 19:23-7; and second, the filing of requests with the county clerk where the candidates are unable to file joint petitions because the offices require the filing of nominating petitions with different filing officials. N.J.S.A. 19:49-2.[3]
Included in the primaries for general election are primary contests for offices whose political divisions are state-wide, less than state-wide but greater than county-wide, county-wide, less than county-wide but greater than municipal-wide, and finally municipal-wide. The relationship of the size of the political division to municipalities, counties and the entire state has made it expedient to designate different filing officers to receive nominating petitions depending on the size of the political division. Nominating petitions for candidates running for offices which are state-wide or of a political subdivision larger than a county are filed with the Secretary of State, those for offices which are county-wide or of a political subdivision larger than a single municipality with the county clerk, and those for municipal office with the municipal clerk. N.J.S.A. 19:23-6.
Individuals seeking office in the same political division or subdivision who wish to affiliate themselves on the ballot can readily do so by filing a joint petition. N.J.S.A. 19:23-7. However, this mechanism is not available to individuals seeking office in separate political divisions requiring filing with separate *392 filing officers. See N.J.S.A. 19:23-6. In order that these latter individuals may affiliate so as to appear together on the ballot, the Legislature has provided that they may be joined on the ballot, or as it is commonly referred to "bracketed," by making mutual requests to the county clerk. N.J.S.A. 19:23-7.
In the primary for general election to be held on June 3, 1980, nominations will be made for offices for which petitions have been filed with the Secretary of State (Congress) and the municipal clerk (municipal and party office). There is only one office in the primary of June 3, 1980 as to which petitions are filed with the county clerk  the position of sheriff of Hudson County. As a result, DiNardo has not filed  and, indeed, in a literal sense cannot file  a "joint petition." There are no other office candidates to join with. This, according to plaintiff, makes N.J.S.A. 19:49-2 inapplicable and bars bracketing  bracketing requested by the state-wide and municipal candidates as well as DiNardo.
In construing a statute the court must consider the legislative purpose, see Newark v. Essex Cty., 160 N.J. Super. 105, 113 (App.Div. 1978), aff'd 80 N.J. 143 (1979), and must give the words of the statute a common-sense meaning within the context of that purpose. See Houman v. Pompton Lakes, 155 N.J. Super. 129, 169 (Law Div. 1977).
N.J.S.A. 19:49-2, insofar as pertinent, provides as follows:
For the primary election for the general election in all counties where voting machines are or shall be used, all candidates who shall file a joint petition with the county clerk of their respective county and who shall choose the same designation or slogan shall be drawn for position on the ballot as a unit and shall have their names placed on the same line of the voting machine; and provided further, that all candidates for municipal or party office in municipalities in counties where voting machines are or shall be used who shall file a petition with the clerk of their municipality bearing the same designation or slogan as that of the candidates filing a joint petition with the county clerk as aforesaid, may request that his or her name be placed on the same line of the voting machine with the candidates who have filed a joint petition with the county clerk as aforesaid by so notifying the county clerk of said county in writing within two days after the last day for filing nominating petitions and thereupon the county clerk shall forthwith notify the campaign manager of such candidates filing a joint petition as aforesaid of said request, and if the said campaign manager shall file his consent in writing with the said county clerk within two days after the receipt of said notification from said county clerk, the clerk of said county shall place the name of such candidate on the same line of the voting machine on *393 which appears the names of the candidates who have filed the joint petition as aforesaid; provided, also, that any candidate filing a petition with the Secretary of State may request that his or her name be placed on the same line of the voting machine with the candidates who have filed a joint petition with the county clerk as aforesaid by so notifying the county clerk of said county in writing within two days after the last day for filing nominating petitions, and thereupon the county clerk shall forthwith notify the campaign manager of such candidates filing a joint petition as aforesaid of said request, and if the said campaign manager shall file his consent in writing with the said county clerk within two days after the receipt of said notification from said county clerk, the clerk of said county shall place the name of such candidate on the same line of the voting machine on which appears the names of the candidates who have filed the joint petition as aforesaid.
Plaintiff's contention rests on the notion that the term "joint petition" as used in this statute bears its literal meaning  i.e., a petition filed jointly by two or more candidates. He would make the existence of a petition shared by two or more candidates an indispensable trigger to the right of bracketing. Viewed in the light of the legislative purpose, such a construction must be untenable. An examination of the result leads to the inevitable conclusion that such a construction would operate to emasculate the legislative intention and, indeed, in every primary wherein there does not exist at least two county-wide offices, to destroy the well-established pattern of having candidates for different offices but similar view appear together on the ballot. This pattern is not simply one which benefits the candidates, but one which is essential to an intelligible ballot. Voters have an important interest in finding candidates of similar persuasion grouped together rather than being spread upon the ballot in random fashion. See Quaremba v. Allan, 67 N.J. 1, 12-13 (1975). Voters are disadvantaged if philosophically affiliated candidates are scattered around the ballot.
In enacting N.J.S.A. 19:49-2, the Legislature intended to provide for bracketing of candidates in all primary elections. When there exists only one office for which petitions may be filed with the county clerk, such petitions fulfill the joint petition requirement of N.J.S.A. 19:49-2  they are the joint petitions referred to therein.
While this construction would seem to do violence to the literal meaning of the phrase, it is the sensible and reasonable interpretation of the legislative intent. See Newark v. Essex *394 Cty., supra, 160 N.J. Super. at 113-114. See also, Axtell v. Caputo, 85 N.J. Super. 80, 84 (App.Div. 1964), where the court said that the word "column" should be read as "horizontal row" in order to meet the legislative purpose.

III
Although not necessary to the opinion in view of the foregoing findings, it must be noted that plaintiff's action is procedurally deficient in the failure to join necessary parties. See R. 4:28. This deficiency is fatal to much of the relief sought without the necessary joinder. For example, plaintiff seeks to enjoin conduct of municipal chairmen, yet the municipal chairmen have not been joined. Plaintiff challenges alleged actions of the county committee but has failed to join the members  individually or collectively. If plaintiff's prayers as to bracketing were granted, individuals seeking Democratic nomination for party office, municipal office and Congress who, according to plaintiff have sought (and presumably desire) such bracketing, would be deprived of that supposed benefit, yet they also have not been joined. Thus, the action seeks to directly impinge upon the rights of numerous individuals who have not been joined and as to whom such action would be taken without legal notice and without an opportunity to be heard  a constitutionally impermissible result.
NOTES
[1] The term "committee" as used in this opinion refers to the party organization provided for in Chapter 5 of the Election Law. N.J.S.A. 19:5-1 et seq.
[2] Irregularities in the nominating process can be fatal to a position on the ballot. See McCaskey v. Kirchoff, 56 N.J. Super. 178 (App.Div. 1959).
[3] Hudson County has voting machines; thus, all references are to statutes applicable to such counties.