860 A.2d 967 (2004)
373 N.J. Super. 93
Phyllis BATKO, Plaintiff-Appellant,
v.
SAYREVILLE DEMOCRATIC ORGANIZATION, Defendant-Respondent.
Superior Court of New Jersey, Appellate Division.
Argued September 28, 2004.
Decided November 18, 2004.
*968 Philip G. George argued the cause for appellant (Eric M. Bernstein & Associates, attorneys; Eric Martin Bernstein, of counsel; Mr. George on the brief).
Joseph P. Ambrosio argued the cause for respondent.
Before Judges KESTIN,[1] LEFELT, and FUENTES.
The opinion of the court was delivered by
FUENTES, J.A.D.
This opinion revises and replaces the opinion released on October 15, 2004. In that earlier opinion we held, in part, that the screening process utilized by defendant, the Sayreville Democratic Organization, to select the person who will run under the party's banner in the local primary election, violated the provisions of N.J.S.A. 19:34-52. Thereafter, defendant moved for reconsideration arguing that N.J.S.A. 19:34-52 has been rendered unconstitutional by virtue of the United States Supreme Court decision in Eu v. San Francisco County Democratic Central Comm., 489 U.S. 214, 109 S.Ct. 1013, 103 L.Ed.2d 271 (1989), with respect to a similar California statute. After a careful review of the authority cited, we agree.
Before we begin our analysis, we are compelled to address the steps that led to this unusual outcome. This case was fully briefed by the parties and argued before us by appellate counsel from both sides. In the course of oral argument, we specifically requested counsel to address the legality of the screening process utilized by defendant, in light of the clear injunction against it in N.J.S.A. 19:34-52. No one at that time, or at any other time prior to the release of our earlier decision, questioned the constitutionality of this statute.
It hardly bears stating that attorneys have a duty to bring to the attention of the court any legal authority that impacts, directly or indirectly, on the legal issues before it. There is no more important or dispositive source of legal authority than decisions of the Supreme Court of the United States. Having said that, we do not absolve ourselves from responsibility. We, as judges, also have a duty to independently research the issues in an effort to discover any authority that supports or undermines our rulings.
With this as a backdrop, we now address the business at hand. As we said in our earlier decision, this case is a textbook example of local intra-party squabbles. It is also a vivid reminder that, like sausages, our democratic political process is best *969 appreciated when viewed as a finished product. With this admonition in mind, we will now address the legal issues involved.

I
The facts from which this issue arises are not in dispute. Plaintiff, Phyllis Batko, is a local political figure in Sayreville. She was a registered Democrat from 1978 to 1997. In 1996, she ran unsuccessfully as a Democratic candidate for a seat on the Borough Council. This defeat apparently prompted her to switch to the Republican party in 1997. Thereafter, she again ran for membership in the Borough Council, this time as a Republican, but was once again defeated.
Although not entirely clear from the record, Batko apparently remained a registered Republican for the next three years. In November 2000, she launched a third bid for a seat on the Council, her second as a Republican, and was elected for a three-year term. Her allegiance to the Republican party proved to be short lived. On April 12, 2002, before completing her term as a Republican member of the Council, Batko switched back to the Democratic party.
In March 2003, as Borough Council elections approached, plaintiff intended to stand for reelection as a Democrat. She thus requested the right to participate in defendant's "screening process." According to plaintiff's complaint, "screening" is the method "whereby a candidate for a position as a Democratic candidate in the Primary Election is interviewed and selected or not selected by the Sayreville Democratic Party to run as a candidate [in the primary election]." At oral argument before us, counsel for defendant described this process as a means of selecting the individual who will run under the "party line" on the ballot. That is, through this screening process, the local organization[2] selects the individual whose name will appear directly under the Sayreville Democratic Organization's banner in the voting machine.
Defendant denied plaintiff's March 2003 request to be screened. According to defendant, under the bylaws existing at the time, plaintiff was not qualified to participate in the screening process because she had not been a registered Democrat for at least two years preceding the screening. Article XII, ¶ 4 of the bylaws reads as follows:
No person shall have his or her name placed in nomination for any election, endorsement or otherwise by the Sayreville Democratic Municipal Committee unless such person shall have been a registered Democrat for at least two (2) years, and shall have first submitted, in writing to the Secretary, his or her willingness to accept the duties and responsibilities of such office or endorsement, and shall appear personally at such meeting or meetings as the Committee may direct (unless physically unable to do so). [Emphasis added.]
Plaintiff alleges that, in a previous legal challenge, the Law Division found the emphasized language cited above to be ambiguous. According to plaintiff, faced with this ambiguity, the trial court entered an order refusing to enforce these restrictions and allowing her to be screened by the party for the 2003 municipal primary election.[3]
*970 We cannot ascertain from the record here whether plaintiff was screened and, if so, selected as defendant's candidate in the primary and thereafter ran for reelection in the 2003 general election as a Democrat. We can infer, however, that regardless of party affiliation, plaintiff was not reelected to her seat on the Sayreville Borough Council.
Undaunted by her political missteps, plaintiff sent a letter to defendant on March 4, 2004, requesting once again to be screened as a candidate for a seat on the Council for the Democratic Primary election scheduled for June 2004. Unbeknownst to plaintiff, defendant had comprehensively amended its bylaws on February 10, 2004. Among the amendments adopted was a revision to Article XII, ¶ 4, which was re-codified as Article X, ¶ 2, to read as follows:
No person shall be eligible to have his or her name placed in nomination for any election, or endorsement for a Borough-wide elected office by the Sayreville Democratic Organization, Inc. unless such person shall have been a registered Democrat for at least two (2) years immediately preceding such nomination, selection or endorsement. This specific foregoing provision may be waived by a 2/3 affirmative vote of the Organization. [Emphasis added.]
It seems evident to us that this amendment was intended, at least in part, to clear up any alleged ambiguity existing in the previous bylaws. It also provides an important relief mechanism for those aggrieved by its passage.
In a letter dated March 22, 2004, citing this specific amendment, Sayreville Democratic Organization chairman John Wisniewski responded to plaintiff's March 4, 2004, letter as follows:
Please be advised that pursuant to the by-laws of the Sayreville Democratic Organization as amended on February 10, 2004, you are not eligible to be a candidate for the party's endorsement. Specifically, Article X of the by-laws specify that you must have been registered as a Democratic voter for a period of not less than two years immediately preceding the screening. The screening date this year is Thursday, April 1, 2004. The records of the Middlesex County Board of Elections indicate that you will not have been registered as a Democratic voter for the two years immediately preceding the screening. [Emphasis added.]
Plaintiff had last registered as a Democrat on April 12, 2002. She thus fell twelve days short of the two-year party affiliation requirement.
Plaintiff did not request a waiver of this requirement as provided in the amendment. Instead, she mounted this legal challenge alleging that the amendment was adopted in violation of the voting procedures outlined in the bylaws. In support of this argument, plaintiff presented the certification of Paul A. DeSarno, a self-described member of the Sayreville Democratic Organization and a lawyer who has served as defendant's legal counsel.
According to DeSarno, he attended the February 10, 2004, meeting where the amendment was read and debated. When it came to a vote, the chairman called for those in attendance to indicate their vote by orally responding in the form of "aye" or "nay." DeSarno allegedly objected because the bylaws required amendments to be adopted by secret written ballot and by a two-thirds majority vote of those in attendance. *971 His objection was overruled by the chairman who proceeded to take a voice vote. In a certification submitted in opposition to plaintiff's complaint, defendant's secretary Daniel Buchanan implicitly conceded that the vote to amend the bylaws was taken in violation of the secret written ballot requirement, but denied that DeSarno objected to the procedure.
The screening for the June primary was scheduled for April 1, 2004. On March 31, 2004, plaintiff filed an order to show cause and verified complaint in the Law Division seeking emergent relief (1) permitting her to participate in defendant's screening for candidates to be the Democratic choice for the 2004 election for the Sayreville Borough Council; and (2) invalidating defendant's February 2004 amendment to defendant's bylaws. The trial court denied the relief without oral argument, simply writing on the order: "this order to show cause is denied because there is no state action. Therefore, the court is without jurisdiction to enforce the relief plaintiff has requested." We denied plaintiff's application for emergent review of the trial court's order, but granted her motion for acceleration.

II
We begin our analysis by emphasizing that there is no fundamental right to run for office or to be a party's candidate in an election. See, e.g., McCann v. Clerk of City of Jersey City, 167 N.J. 311, 325, 771 A.2d 1123 (2001). In the absence of a violation of a controlling statute or the infringement of a clear legal right, courts have historically been reluctant to interfere in intra-party controversies. Deamer v. Jones, 42 N.J. 516, 520, 201 A.2d 712 (1964). Accord O'Neill v. Lerner, 154 N.J.Super. 317, 325, 381 A.2d 383 (App.Div.1977), certif. denied, 75 N.J. 610, 384 A.2d 840 (1978).

N.J.S.A. 19:34-52 provides that:
No state, county or municipal committee of any political party shall prior to any primary election indorse the candidacy of any candidate for a party nomination or position.
[N.J.S.A. 19:34-52.]
In Eu v. San Francisco County Democratic Central Committee, supra, the Court considered the constitutionality of a California statute that similarly prohibited the official governing bodies of political parties from endorsing candidates in party primaries. In holding this statutory prohibition unconstitutional, as a violation of the First Amendment, Justice Marshall, writing for the Court, explained that "[f]ree discussion about candidates for public office is no less critical before a primary than before a general election." Eu, supra, 489 U.S. at 223, 109 S.Ct. at 1020, 103 L.Ed.2d at 282.
The Court also noted that California was one of three states, Florida and New Jersey being the other two, that had enacted similar statutory bans. Id. at 226, n. 17, 109 S.Ct. at 1022, 103 L.Ed.2d at 284. Florida's statute had been previously declared unconstitutional on First Amendment grounds. Abrams v. Reno, 452 F.Supp. 1166, 1171-72 (S.D.Fla.1978), aff'd, 649 F.2d 342 (5th Cir.1981), cert. denied, 455 U.S. 1016, 102 S.Ct. 1710, 72 L.Ed.2d 133 (1982).
New Jersey reported decisions that have considered the applicability and enforcement of N.J.S.A. 19:34-52, have not directly addressed the potential constitutional problem noted in Eu. See Fields v. Hoffman, 105 N.J. 262, 520 A.2d 751 (1987) (Stein, J., dissenting); Quaremba v. Allan, 67 N.J. 1, 334 A.2d 321 (1975); Gillen v. *972 Sheil, 174 N.J.Super. 386, 416 A.2d 935 (Law Div.1980);[4]Cavanagh v. Morris Cty. Democratic Comm., 121 N.J.Super. 430, 297 A.2d 594 (Ch.Div.1972). However, defendant has brought to our attention an unpublished consent judgment entered by the Mercer County Superior Court in the case of New Jersey Republican State Comm. v. Robert Del Tufo, No. L-91-1645 (Law Div. April 12, 1991), in which the Attorney General expressly acknowledged the unconstitutionality of N.J.S.A. 19:34-52.
It is obvious to us that, in adopting N.J.S.A. 19:34-52, the Legislature intended that primaries be more than a perfunctory exercise where the voter's role is reduced to rubber stamping the backroom-selection of the party's leadership. Despite this laudable goal, we are satisfied that, as in California and Florida, our State ban on primary endorsements violates the free speech principles articulated by the Supreme Court in Eu. We gather, based on the record that has been made available to us, that the Attorney General has come to a similar conclusion.

III
Having concluded that N.J.S.A. 19:34-52 is unconstitutional, the question remains: what is the appropriate remedy under the circumstances presented here?
The trial judge did not consider plaintiff's constitutional challenge to the bylaw because she concluded that defendant's enforcement of the bylaw did not constitute "state action." We affirm the judgment dismissing plaintiff's complaint for reasons other than those expressed by the trial court. Ellison v. Evergreen Cemetery, 266 N.J.Super. 74, 78, 628 A.2d 793 (App.Div.1993).
The last sentence of the disputed bylaw permitted plaintiff to request a waiver of the two-year requirement. Had defendant granted this waiver, the need for this legal action would have been averted. Plaintiff has not offered any explanation for her failure to make such a request. Thus, she did not avail herself of an available internal remedy that could have granted her the very relief she sought in the Law Division.
Under the principle of exhaustion of remedies, a court may decline to adjudicate the validity of a political party's bylaw when the challenger failed to utilize a part of that bylaw that would have allowed her to escape from the illegality she asserts. Cf. Marchitto v. Central R. Co. of N.J., 9 N.J. 456, 469-70, 88 A.2d 851 (1952) ("it is the settled rule that the courts will not interfere with the internal affairs of ... an association unless the complaining member has exhausted such remedies as are provided him by the laws of the association itself"), overruled in part on other grounds Donnelly v. United Fruit Co., 40 N.J. 61, 190 A.2d 825 (1963); Leeds v. Harrison, 7 N.J.Super. 558, 574, 72 A.2d 371 (Ch.Div.1950) (members of voluntary association "must exhaust the remedies granted to them under the constitution and by-laws"). Accord Danese v. Ginesi, 280 N.J.Super. 17, 24, 654 A.2d 479 (App.Div.1995).
We hold that plaintiff's challenge to the results of the June 2004 Democratic primary elections was not cognizable in the Law Division because she failed to exhaust *973 all of the available avenues for relief provided in defendant's bylaws.
Affirmed.
NOTES
[1] Judge Kestin did not participate in oral argument. However, the parties consented to his participation in the decision.
[2] The record here does not indicate who these "screeners" are, how they are selected, or if they serve for a fixed term. The record is also silent as to the criteria utilized by these screeners to make their selection.
[3] Plaintiff has not provided us with copies of the record of those proceedings, including copies of any orders allegedly entered by the Law Division. We also note, however, that defendant has not disputed plaintiff's contentions in this respect.
[4] In Gillen, the Law Division avoided the looming constitutional problem by distinguishing between the activities of party officers, acting in their personal capacity, from the endorsement of the party itself. Gillen, supra, 174 N.J.Super. at 390, 416 A.2d 935.