746 A.2d 460 (2000)
HARTFORD FIRE INSURANCE CO., Plaintiff-Respondent,
v.
CONESTOGA TITLE INSURANCE CO., Defendant-Appellant, and
Merit Abstract Corp., William F. Attardi, Jr., Elizabeth Attardi, and First American Title Insurance Co., Defendants.
Superior Court of New Jersey, Appellate Division.
Argued February 14, 2000.
Decided February 25, 2000.
Craig R. Blackman of the Pennsylvania bar, admitted pro hac vice, for defendant-appellant (Stradley, Ronon, Stevens & Young, attorneys; Mr. Blackman, of counsel; Francis X. Manning and Nancy L. Margolis, on the brief).
Robert W. McCann, Hawthorne, for plaintiff-respondent (Klotz & McCann, attorneys; Mr. McCann, on the brief).
Before Judges PETRELLA, CONLEY and COBURN.
*461 The opinion of the court was delivered by COBURN, J.A.D.
Plaintiff, Hartford Fire Insurance Co. ("Hartford") filed this action to rescind a fidelity bond issued to defendant Merit Abstract Corp. ("Merit"). The action was opposed by defendant Conestoga Title Insurance Company ("Conestoga"), which had obtained a $1.2 million judgment in federal court against Merit and its president, and now sought the benefits, if any, afforded to Merit by the fidelity bond. The trial judge granted Hartford summary judgment. Conestoga appealed. We affirm on the ground that the thefts from Merit resulting in the claim under the bond were committed not by an employee but by an individual who served as president and was the corporation's alter ego. We reach that conclusion even though as a matter of form the president's wife owned all the corporate stock and was the sole director, because in reality the corporation was owned and controlled by the president.
The relevant facts are not in dispute. The president of Merit was William F. Attardi, Jr. ("Attardi"). His wife, Elizabeth, was the sole director and stockholder; however, she had absolutely nothing to do with the corporation or its business. All corporate affairs were solely under the control of Attardi, who supervised the work of the company's four employees.
Conestoga, a title insurance company, authorized Merit to issue title insurance policy commitments on its behalf. Attardi supervised the related real estate closings, receiving checks from home purchasers. Instead of using these trust funds for their intended purpose, he stole them. The thefts occurred before and after Merit had obtained the fidelity bond from Hartford.
In applying to Hartford for the fidelity bond, Attardi falsely stated in writing that the officers and employees of Merit had "always performed their respective duties honestly." The Hartford bond insured Merit against dishonest acts of its employees; and, in relevant part, it defined the term "employee" as
Any natural person: (1) [w]hile in your service ...; and (2) [w]hom you compensate by salary ...; and (3) [w]hom you have the right to direct and control while performing services for you.

[(Emphasis added).]
As a general matter, "fidelity bonds indemnifying employers against dishonest acts of their employees are to be broadly construed." Mortgage Corp. v. Aetna Cas. & Sur. Co., 19 N.J. 30, 36, 115 A.2d 43 (1955). But that principle is customarily limited to cases where the question is whether the particular acts of a true employee are covered by the bond, id. at 36-38, 115 A.2d 43, a point not presently at issue.
The question is whether Attardi was an employee as that term is defined in the bond. In Conestoga Title Insurance Co. v. Premier Title Agency, Inc., 328 N.J.Super. 460, 746 A.2d 462 (App.Div.2000), decided today, we agreed with the majority of courts that this common definition of employee in corporate fidelity bondspersons whom you have the right to direct and control while performing services for youis unambiguous and means that thefts by corporate alter egos are not covered. Id. at 465, 746 A.2d 462.
The only difference between this case and Conestoga is that here the corporate alter ego, Attardi, had installed his wife as director and had designated her as the owner of all the corporate stock. Had her position or stock ownership been grounded in reality, Merit, and therefore Conestoga, might have had a case worth pursuing. But, in fact she knew nothing of the corporation's business and was completely uninvolved. Instead, the corporation was entirely dominated by Attardi.
Although a corporation and its stockholders are usually treated as separate entities, "a court of equity is always concerned with substance and not merely *462 form, and thus, it will go behind the corporate form where necessary to do justice." Walensky v. Jonathan Royce Int'l, Inc., 264 N.J.Super. 276, 283, 624 A.2d 613 (App.Div.), certif. denied, 134 N.J. 480, 634 A.2d 527 (1993); State, Dept. of Envtl. Protection v. Ventron Corp., 94 N.J. 473, 500, 468 A.2d 150 (1983).
At best it could be said that Attardi's wife had a theoretical right to govern Merit and thereby control her husband. In Conestoga, supra, however, we endorsed the commonly held view that under the standard fidelity bond's definition of covered and excluded employees, "the `right' to govern and direct ... must be more than an ephemeral right inhering in the corporate form; rather it must have some grounding in reality." Bird v. Centennial Ins. Co., 11 F.3d 228, 233 (1st Cir.1993).
If we were to permit recovery on the bond in these circumstances, the reality is that a thief who utterly dominated a corporation could wrongfully obtain the benefits of a fidelity bond by placing formal ownership of the company in a spouse or confederate. That is patently inconsistent with the settled policy of not permitting insurance for intentional wrongdoing. Ambassador Ins. Co. v. Montes, 76 N.J. 477, 483, 388 A.2d 603 (1978); In re World Hospitality Ltd., 983 F.2d 650, 652 (5th Cir.1993). That Conestoga, and not the insured, is seeking coverage under the bond does not diminish the force of these considerations. As a judgment creditor of Merit, Conestoga is essentially in the position of an assignee, and as such its rights can rise no higher than those of the assignor. James Talcott, Inc. v. H. Corenzwit & Co., 76 N.J. 305, 309-10, 387 A.2d 350 (1978); Bird, supra, 11 F.3d at 233 n. 7.
Affirmed.