746 A.2d 462 (2000)
CONESTOGA TITLE INSURANCE CO., Plaintiff/Third Party Plaintiff-Respondent,
v.
PREMIER TITLE AGENCY, INC., f/k/a Stewart Title Agency of Salem County, Robert M. Wurster, Patricia J. Wurster, George Hampton, Beverly Hampton, Kevin Mark Marini, William McIntyre, Janet M. McIntyre, Patricia J. McMahon, Margaret M. McMahon, Richard K. Humphreys, Sherry J. Humphreys, John T. Segich, Laura M. Segich, Frederice Humphreys, William T. Smith, Susan P. Smith, Bank United of Texas, FSB, d/b/a Commonwealth United Mortgage, Defendants,
v.
Old Republic Insurance Company a/k/a Old Republic Surety Company, Frontier Insurance Company, Premier Title Agency, Inc., f/k/a Stewart Title Agency of Salem County, Third-Party Defendants-Appellants.
Superior Court of New Jersey, Appellate Division.
Argued February 14, 2000.
Decided February 25, 2000.
*463 Roger P. Sauer, Roseland, for third-party defendant-appellant Old Republic Insurance Company (Lindabury, McCormick & Estabrook and Friedman Siegelbaum, attorneys; Mr. Sauer and Lindsey H. Taylor, on the brief).
R. James Kravitz, Lawrenceville, for plaintiff/third party plaintiff-respondent (Fox, Rothschild, O'Brien & Frankel, attorneys; Mr. Kravitz, of counsel and on the brief).
Wolff & Samson, for amici curiae The Surety Association of America and American Insurance Association (Edward G. Gallagher and Martha L. Perkins, Washington, DC, of counsel; Armen Shahinian, Roseland, on the brief).
Before Judges PETRELLA, CONLEY and COBURN.
The opinion of the court was delivered by COBURN, J.A.D.
This is an action on a fidelity bond by the assignee of the insured. The Law Division judge found in favor of the assignee, plaintiff Conestoga Title Insurance Company ("Conestoga"), and entered judgment in the amount of $385,470.59. The bond issuer, defendant Old Republic Insurance Company ("Old Republic"), appeals. We reverse because the thefts resulting in the claim under the bond were committed not by an employee of the insured but by its alter ego, an individual who was the insured's sole director, officer, and stockholder.
Although a bench trial occurred, the relevant facts are undisputed. Conestoga, a title insurance company, authorized defendant Premier Title Agency, Inc. ("Premier") to issue title insurance policy commitments on its behalf and required that Premier obtain fidelity insurance. Premier obtained that insurance from Old Republic based on a written application that included the following information: "Number of employees by position[:] Officials [-] 1 President[;] Accounting [-] 1 Accountants[;] Other [-] 1 Secretary/Reception." It also recited "TOTAL NUMBER OF EMPLOYEES [-] 2 + 1 owner." The application is used to calculate premiums, which are based on the number of employees; however, Old Republic charges the same premium for up to five employees and does not include persons listed as owners in setting the premium.
*464 Defendant Robert M. Wurster was the sole director, president, and shareholder of Premier, which had two other employees. In that capacity, he supervised numerous title closings during which he issued Conestoga title commitments and received checks payable to Premier from home purchasers, the funds to be held in trust and used to satisfy existing mortgages on the purchased properties. Instead of paying off the previous mortgages on the properties, Wurster stole the money. Conestoga reimbursed Premier's clients, and obtained a judgment against Premier and an assignment of any rights it might have against Old Republic under the fidelity bond.
The fidelity bond insured Premier against dishonest acts of its employees; and, in relevant part, it defined the term "employee" as "Any natural person ... in your service ... [w]hom you compensate directly by salary ...; and [w]hom you have the right to direct and control while performing services for you [.]" (Emphasis added). The bond also provided that "this insurance is for your benefit only. It provides no rights or benefits to any other person or organization."
The trial judge found as a fact that Wurster, the thief, was the alter ego of Premier. No one disputes that determination. He reasoned that under the case law "coverage should not be afforded in `alter ego' situations unless such coverage was part of the bargain." Based on the application for the fidelity bond and the testimony that applications were used to set premiums, he concluded that Old Republic had agreed to provide coverage for embezzlements committed by Wurster with respect to funds held in trust by Premier. He properly concluded that Conestoga was not a third-party beneficiary under the bond (and Conestoga does not disagree), but he sustained its right to proceed against the bond as assignee of Premier's alleged rights.
An assignee's rights are limited to the rights of the assignor and are subject to all the equities and defenses that could have been asserted against the assignor before assignment. James Talcott, Inc. v. H. Corenzwit & Co., 76 N.J. 305, 309-10, 387 A.2d 350 (1978). Therefore, we turn our attention to Premier's alleged rights under the fidelity bond.
As a general matter, "fidelity bonds indemnifying employers against dishonest acts of their employees are to be broadly construed." Mortgage Corp. v. Aetna Cas. & Sur. Co., 19 N.J. 30, 36, 115 A.2d 43 (1955). But that principle is customarily limited to cases where the question is whether the particular acts of a true employee are covered by the bond, id. at 36-38, 115 A.2d 43, a point not presently at issue.
The fundamental question to be resolved is whether Wurster was an employee of Premier as defined in the fidelity bond. Conestoga does not appear to be contending that the policy definition is ambiguous, and the trial judge did not so find. Rather, he based his judgment on the information contained in the application, which he believed established an agreement to cover Wurster, a point that we will consider after discussing the policy itself.
The courts of this state have not yet addressed the basic issue, but numerous cases have held that this common definition of employee in corporate fidelity bondspersons whom you have the right to direct and control while performing services for youis unambiguous and means that thefts by corporate alter egos are not covered. Bird v. Centennial Ins. Co., 11 F.3d 228, 233-34 (1st Cir.1993).
The general rule that corporations are separate and distinct from their shareholders and officers, Stopford v. Boonton Molding Co., 56 N.J. 169, 187, 265 A.2d 657 (1970), has no place in this analysis. Nor is there any significance to the corporation's theoretical right to govern an entirely dominant "employee." As the court said in Bird, supra:
*465 [W]e join those courts that ... reject the claim that the theoretical right to govern and direct a dominant corporate actor is sufficient to render that actor an employee under the definition of employee set forth in the Policies. We think it apparent that the "right" to govern and direct referred to in the Policies must be more than an ephemeral right inhering generally in the corporate form; rather, it must have some grounding in reality.

[11 F.3d at 233 (citations omitted).]
Although Conestoga continues to rely, in part, on Premier's theoretical right to control Wurster, the trial judge properly rejected that argument, as do we.
Our conclusion finds strong support in considerations of policy:
A corporation can only act through its officers and directors. When one person owns a controlling interest in the corporation and dominates the corporation's actions, his acts are the corporation's acts. Allowing the corporation to recover for the owner's fraudulent or dishonest conduct would essentially allow the corporation to recover for its own fraudulent or dishonest acts. The [fidelity] bonds, however, were clearly designed to insure the corporations against their employee's dishonest acts and not their own dishonest acts.
[In re World Hospitality Ltd., 983 F.2d 650, 652 (5th Cir.1993) (citation omitted).]
And the policy of not permitting insurance for intentional wrongdoing has been expressed as our own in other settings involving insurance claims. See, e.g., Ambassador Ins. Co. v. Montes, 76 N.J. 477, 483, 388 A.2d 603 (1978). Consequently, we are satisfied that this fidelity bond provides no coverage to Premier for the acts of Wurster. Since Conestoga's only rights were as assignee, it was not entitled to judgment on the bond.
The application for the policy does nothing to fortify Conestoga's position for a number of reasons.
First, the portions of the application on which Conestoga relies make no reference whatsoever to coverage; they merely request information with respect to the numbers and titles of employees. Although the form might be interpreted as indicating that the corporation had only one officer, by implication Wurster, there is nothing to indicate that he was the sole director and owner of all the corporate stock, and that the corporation was nonetheless desirous of coverage for his thefts even though it had no control over him. Although the number of employees listed generally dictated the amount of the premium, since there were less than five listed, the mention of the president as an employee had no effect on the premium. Moreover, he might have been a covered employee if the corporation had other stockholders and directors through whom the corporation could have exercised the necessary control. See, e.g., General Finance Corp. v. Fidelity & Cas. Co., 439 F.2d 981 (8th Cir.1971).
Second, when an application for an insurance policy is neither attached to the policy nor incorporated by reference, the general rule is that the application may not be considered to ascertain the intent of the parties. Wright v. Newman, 598 F.Supp. 1178, 1203 (W.D.Mo.1984), aff'd, 767 F.2d 460 (8th Cir.1985).
Third, even if the application were considered as part of the policy and even if there were a conflict between the application and the policy, which we do not perceive, the terms of the policy, being the later expression of intent, would generally control. Ibid.
Therefore, we reverse and remand for entry of judgment in favor of Old Republic dismissing the complaint with prejudice.
Reversed.