WILLIAM M. BEARD, RELATOR, v. ROGER C. ALDRICH, RESPONDENT.

Argued January 23, 1930—Decided February 13, 1930.

Before Justices TRENCHARD, LLOYD and CASE.

For the relator, *Martin P. O'Connor* and *J. Edward Ashmead.*

For the respondent, *Francis V. Dobbins* and *Conover English.*

The opinion of the court was delivered by

TRENCHARD, J. This matter is before the court on a demurrer to the plea of the respondent to the information filed by the relator by leave of court. .

The pleadings exhibit the following matters of fact:

The information was filed by relator, a citizen and taxpayer of the town of Westfield, to test the validity of the election of the respondent, Roger C. Aldrich, to the office of permanent chairman of the "Joint Meeting," consisting of the municipalities of the city of Rahway, borough of Garwood, borough of Roselle Park, borough of Kenilworth, township of Cranford, town of Westfield, township of Springfield, township of Clark and the township of Woodbridge, organized under an act of the legislature of the State of New Jersey, entitled "An act to authorize two or more municipalities in this state to jointly construct and maintain outlet or trunk sewers," approved March 15th, 1899, and the acts amendatory thereof and supplemental thereto. At the time of the organization of the joint meeting in November, 1928, Edward S. F. Randolph was a member of the town council of Westfield and was elected "permanent chairman" of the joint meeting, and qualified as such. His term of office as a member of the town council of Westfield expired December 31st, 1928. No question was raised as to his eligibility to continue to act as chairman of the joint meeting until shortly before October 24th, 1929, when a resolution declaring the office of chairman vacant was passed, and an election was held and Roger C. Aldrich, a member of the governing body of Cranford, was attempted to be chosen as permanent chairman to fill the alleged vacancy.

Counsel for Mr. Aldrich, the respondent, correctly state the issue. They say in their brief: "The main question to

be determined is whether, having ceased to be a member of the town council of Westfield he [Randolph] thereupon, *as a matter of law,* became disqualified to continue in the office of permanent chairman, and hence, that a vacancy occurred which the statute required the joint meeting to fill and which it did fill by the election of Aldrich."

Of course the solution of that question involves an examination and construction of the act of 1899 (*Pamph. L., p.* 48; *Comp. Stat., p.* 3588) and its supplements. *Pamph. L.* 1903, *p.* 36; *Pamph. L.* 1905, *p.* 268.

We think that the action of the joint meeting in attempting to remove Mr. Randolph and elect another in his place as permanent chairman is illegal and void.

Under the act of 1899, and its supplements, the person elected permanent chairman at the time of the organization of the joint meeting is entitled to continue as permanent chairman until the completion of the work, irrespective of the fact that subsequent to his election as permanent chairman he ceased to be a member of the governing body of one of the municipalities composing the joint meeting. While it is clear that the act contemplates that any newly elected permanent chairman shall at the time of his election be a member of one of the governing bodies composing the joint meeting, it is equally clear that it contemplates that when once elected, there shall be no change in the personnel of the office of permanent chairman until the completion of the work and the reorganization of the joint meeting for the purpose of operation.

Section 2 of the act of 1899, page 51, provides that at the organization meeting the members "shall proceed at once to organize as a joint meeting, by electing, by ballot, a member of one of the bodies or boards of the municipalities composing such joint . meeting, *a permanent chairman* of such joint meeting; * * * such joint meeting shall continue to exist until the full completion of the work or improvement * * *; such joint meeting may meet and adjourn from time to time, as it may deem advisable, during the progress and continuance of the work of such public improvements and until the completion thereof," &c.

In this provision of the statute there are several things most significant as to the legislative intent. (1) It is provided that the joint meeting shall continue to exist until the full completion of the work. (2) It may meet and adjourn from time to time, as it may deem advisable, during the progress and continuance of the work of such public improvements and until the completion thereof. Obviously the legislature contemplated the joint meeting to continue through the full period of construction; and, most significant of all— (3) the chairman elected upon the organization of the joint meeting is a *permanent* chairman.

Turning to Webster's New International Dictionary the word "permanent" is stated to be derived from the Latin verb *permanere*—"to stay or remain to the end, to last." To elect a "permanent chairman" obviously is to elect one to stay and remain to the end, or in this case in the express words of the statute, "until the full completion of the work or improvement" (*Pamph. L.* 1899, *p.* 51, § 2); "until the final completion of the work contracted to be performed by the municipalities." *Pamph. L.* 1903, *p.* 36, § 1.

There seems to be nothing in the act that would signifiy any other than this most clearly expressed intention, unless it be the last provision of section 2 of *Pamph. L.* 1899, *p.* 53, that "the secretary and treasurer and other officers of such joint meeting, except the chairman, need not be members of any municipal board represented therein." From its juxtaposition to the clause concerning vacancies, the indication seems to be that it was intended to apply to vacancies only; but if considered to be applicable both to original, election to and the filling of vacancies in the offices mentioned, when considered in connection with the other provisions of the act it is evident that it was intended to pertain only to qualification at the time of selection and not to the tenure of office of the person selected. The exception as to the chairman was obviously inserted only to make this provision consistent with the earlier provision providing that at the time of the organization of the joint meeting a member of one of the bodies or boards of the municipalities composing

such joint meeting should be elected a permanent chairman of such meeting. To make clear, when newly elected—whether originally or to fill a vacancy—the chairman must be a member of one of the governing bodies or boards of the municipalities composing the joint meeting. If this provision should be construed or considered to qualify the tenure of office of the person selected chairman, it would be irreconcilably inconsistent with the phrase "permanent chairman" and the other provisions of the act. Whereas, if applied as a necessary qualification at the time of selection for the office, it is entirely consistent with all of the provisions; and it is fundamental that the courts will adopt that construction of a statute which reconciles and gives reasonable meaning to all of the provisions thereof, rather than one which leaves them in irreconcilable conflict. *Steel* v. *Freeholders of Passaic*, 89 *N. J. L.* 609; *Bogart* v. *Hackensack Water Co.*, 101 *Id.* 518.

That such is the correct interpretation of the legislation is made quite plain when we examine the supplement of 1903. *Pamph. L., p.* 36. Section 1 thereof reads:

"1. The permanent chairman, the secretary, the treasurer and the other officers of the joint meeting appointed or elected pursuant to the provisions of the act to which this is a supplement, shall hold their several offices until the final completion of the work contracted to be performed by the municipalities jointly contracting pursuant to the provisions of the act to which this is a supplement, and shall be entitled to receive the compensation fixed for their said offices until the completion of the work, and each of the said officers shall be entitled to receive such compensation at the rate fixed by the joint meeting of the governing bodies or boards of the municipalities jointly contracting for such public improvement from the beginning of their terms until the completion of such public improvement so contracted for; upon the completion of such public improvement, the joint meeting of the governing bodies or boards of the municipalities jointly contracting therefor, shall reorganize for the purpose of maintaining and operating a joint outlet or trunk sewer so com-

pleted by them, by the election of a chairman of such joint meeting and a secretary and a treasurer and such other officers, servants and agents as may be needed for the purpose of the maintenance and operation of such joint outlet or trunk sewer, and shall fix the compensation to be paid all said officers, servants and agents for the services to be performed by them in the future operation and maintenance of said sewer."

Obviously, this act is of controlling significance upon the legal issue presented in this case, since it expressly repeals all inconsistent provisions. The act no doubt means what it expressly states, namely, that the officers originally elected, including the permanent chairman, shall hold their office until the final completion of the work. The phrase "each of the said officers shall be entitled to receive such compensation at the rate fixed by the joint meeting of the governing bodies or boards of the municipalities jointly contracting for such public improvement *from the beginning of their terms until the completion of such public improvement so contracted for*" cannot possibly mean anything other than that the person elected permanent chairman at the organization meeting shall receive compensation from the time of his election "until the completion of such public improvement so contracted for," and no one would contend that it was the purpose of the legislature to pay compensation to a permanent chairman unless it was intended that he should hold the office during the full period for which it is provided he shall receive compensation, namely, from the beginning of his term until the completion of the public improvement contracted for.

Also, a consideration of the subject and objects of the act supports this conclusion. The joint meeting is organized to carry out the construction of a particular public improvement of importance affecting two or more municipalities and likely to include an area and involve problems with which the members of the governing body of any one municipality would not be fully acquainted. During the period of construction, the personnel of the several governing bodies composing the joint

meeting would likely greatly, and possibly completely, change. The legislature undoubtedly considered that it should be assured that some one with knowledge of the details of the project from beginning to end should remain and continue in the joint meeting at least until the improvement had been fully constructed, and to accomplish this purpose they selected the chairman.

In passing, it may be observed that although the supplement of 1903 provides that upon completion of the public improvement the joint meeting "shall reorganize for the purpose of maintaining and operating" the improvement, it very carefully eliminated the word "permanent" before the word "chairman" and provided only for a chairman, and this distinction made by the legislature emphasizes the intention of the legislature to have the chairman originally elected continue as chairman until the completion of the improvement, irrespective of whether he should continue to be a member of one of the governing bodies composing the joint meeting.

By a later supplement the legislature, however, further provided (*Pamph. L.* 1905, *p.* 268):

"1. The chairman of the joint meeting elected upon completion of the joint outlet or trunk sewer upon the reorganization of such joint meeting for the purpose of maintaining and operating the same, shall continue to occupy his said office and to perform the duties thereof until his successor shall be duly elected and qualified, notwithstanding the fact that he shall have ceased to be a member of any one of the governing bodies or boards of the municipalities jointly contracting for such public improvement."

By this statute the legislature again showed that it was not intended to be an essential part of the structure of the joint meeting that the chairman should continue to be a member of any one of the governing bodies composing the joint meeting.

The supplement of 1903 provides that upon completion of the public improvement, the joint meeting "shall reorganize for the purpose of maintaining and operating" the improve-

ment. This is the only reorganization mentioned or contemplated by the act. The 1903 supplement, together with the 1905 supplement, leads to the imperative conclusion that the antecedent organization, namely, the body organized for construction only, is not to be reorganized by the election of new officers until the final completion of the work contracted for. The act of 1903 expressly so declares.

In fine, we think that the intention of the legislature, as definitely and positively expressed, was that the person elected at the time of the organization of the joint meeting as permanent chairman shall continue to hold that office until the final completion of the work contracted for irrespective of the fact that he ceases to be a member of the governing body of one of the municipalities composing the joint meeting.

The contention set forth in the plea, that the relator, in applying for leave to file the information did not act "in good faith for the vindication of his rights and those of the public, but to prevent respondent from calling in question the title of the said Edward S. F. Randolph to the office" was a matter for consideration upon the application of the relator for leave to file the information, and was by implication determined by the Supreme Court or a justice thereof adversely to the respondent by the granting of such leave; and such contention is ineffectual to prevent a judgment of ouster, where, as here, the pleadings disclose that the respondent has no valid title to the office of which he is the incumbent. *Reihl* v. *Wynne,* 105 *N. J. L.* 507; *Bonynge* v. *Frank,* 89 *Id.* 239; *State, ex rel. Mitchell* v. *Tolan,* 33 *Id.* 195. In this connection it is to be noted that no motion to quash the information or the order granting leave to file the same was ever made or suggested so far as the record discloses.

Since the plea exhibits no valid title on the part of the respondent to the office, judgment of ouster should be entered. *Magner* v. *Yore,* 75 *N. J. L.* 198; *Bonynge* v. *Frank, supra; Reihl* v. *Wynne, supra.* See, also, *Davis* v. *Davis,* 57 *N. J. L.* 203.

Accordingly judgment of ouster will be entered against the respondent, with costs.