124 A.3d 717

LOGIC PLANET, INC., PLAINTIFF, v. VARUNA
JYOTHI UPPALA, DEFENDANT.

Superior Court of New Jersey
Law Division Middlesex County

Decided October 20, 2015.

*Michael Lauricella* for plaintiff (*Archer & Greiner, P.C.,* attorneys).

*Susheela Verma* for defendant (*Law Offices of Susheela Verma,* attorneys).

WOLFSON, J.S.C.

## I. Statement of the Case

This litigation involves allegations by plaintiff Logic Planet, Inc. ("Logic Planet"), a company specializing in the placement of information technology ("I-T") consultants, that its former consultant/employee, Varuna Jyothi Uppala ("Uppala"), the defendant/third-party plaintiff in this matter, breached various covenants in their employment contract. Logic Planet's grievance, at its core, is that Uppala violated the non-compete clause within the Agreement when she terminated her association with Logic Planet and thereafter continued to work for one of Logic Planet's end-clients, either directly or indirectly, thus impermissibly bypassing plaintiff.[1]

Defendant Uppala moves to dismiss the complaint[2] contending that Logic Planet is barred from maintaining this action because it failed to comply with the licensing requirements of the Employment Agencies Act, *N.J.S.A.* 34:8–43 to –79 ("the Act").[3] Plaintiff

---

[1] Logic Planet's complaint includes the following causes of action: (1) breach of contract; (2) tortious interference; (3) breach of duty of good faith and fair dealing; (4) unjust enrichment; and (5) breach of duty of loyalty.

[2] Because defendant relies on materials beyond the pleadings in making her motion, I have, *sua sponte,* converted the motion into an application for summary judgment. *See R.* 4:6–2(e) (when materials outside of pleadings are relied upon, the motion is treated as one for summary judgment).

[3] Defendant's position is that any entity, whether an "employment agency" or a "temporary help service firm" (as those distinct terms are defined by the Act), must be licensed as an employment agency if it charges a fee to, or imposes a liquidated damage or restrictive covenant upon, one of its consultants. As will be discussed below, I find this to be an erroneous interpretation of the exemp-

disputes the necessity of licensure, and contends instead that its status as a "temporary help service firm" under the Act requires only "registration" to enforce the contract.[4]

Since there are no reported decisions interpreting this statutory scheme, the novel issue addressed is whether, as defendant contends, "licensure" is a prerequisite to initiating this type of action irrespective of whether the company is an "employment agency" or a "temporary help service firm." For the reasons set forth below, I conclude that the licensing prerequisite to enforcing the provisions of an employment agreement that includes liquidated damages and restrictive covenants is a requirement imposed only upon employment agencies.

## II. Factual Background

Logic Planet is a corporation authorized to do business in the State of New Jersey. At all relevant times, Logic Planet was registered as a consulting firm,[5] but was not licensed as an "employment agency." In December 2011, Logic Planet hired Uppala as an I-T consultant. Pursuant to the terms of the parties' employment agreement, Logic Planet agreed to train Uppala, after which time Uppala would perform consulting services for plaintiff's clients.[6] Logic Planet paid Uppala a salary of

---

tion provision of the Act *(N.J.S.A.* 34:8–46(h)), as it ignores the *"as appropriate "* language that the Legislature used in detailing the constraints upon employment agencies and temporary help service firms, respectively. *See N.J.S.A.* 34:8–45(b). Defendant's interpretation, if accepted, imposes a requirement that is exclusive to employment agencies—i.e., licensure-upon entities that are not.

[4] Plaintiff has cross-moved for leave to amend the complaint to include the assertion that it was a "registered" "temporary help service firm" at the time the cause of action arose. *See N.J.S.A.* 34:8–45(b). Plaintiff's motion to amend is granted, as its factual contentions in this regard have not been disputed.

[5] Pursuant to *N.J.S.A.* 34:8–64(g), "a registered consulting firm shall be permitted to provide temporary help services in the course of its business." *Id.* Where a registered consulting firm provides such temporary help services, additional registration is not required; registration as a consulting firm is sufficient.

[6] Based upon the pleadings and other submissions associated with defendant's motion, it seems that Logic Planet's common practice was to temporarily place

$60,000 per year. It also paid her federal Social Security taxes, carried state and federal unemployment and worker's compensation insurance on her behalf, and provided her with health insurance and other benefits. The employment agreement contained a non-compete clause which, if enforceable, would bar Uppala from working directly for Logic Planet's end clients for a specified period of time. The employment agreement also contained a liquidated damage clause in the amount of $15,000 to be paid in the event that Uppala terminated the agreement prior to its expiration.

According to Uppala, Logic Planet: (1) failed to provide her with any meaningful training; (2) failed to place her with projects as promised; and (3) failed to pay her the agreed-upon wages. Consequently, she contends that she was compelled to leave Logic Planet and find other work. Ultimately she became employed, directly or indirectly, by one of Logic Planet's end-clients, prompting this litigation.

III.   Standard of Review

A moving party is entitled to summary judgment if the pleadings, depositions, admissions on file, and affidavits show palpably that there is no genuine issue of material fact, and that the moving party is entitled to a judgment or order as a matter of law. *R.* 4:46–2(c); *See Judson v. Peoples Bank and Trust Co. of Westfield,* 17 *N.J.* 67, 110 *A.2d* 24 (1954). The determination of whether there exists a genuine issue with respect to a material fact challenged requires the court to consider whether the competent evidential materials presented, when viewed in the light most favorable to the non-moving party, in consideration of the applicable evidentiary standard that would apply at trial, are sufficient to permit a rational fact-finder to resolve the alleged disputed issue

its own employees with its end-clients to service those clients' needs on a temporary basis. The dispositive question is whether this kind of temporary placement renders Logic Planet an "employment agency" under the Act.

in favor of the nonmoving party. *Brill v. Guardian Life Ins. Co.,* 142 *N.J.* 520, 540, 666 *A.*2d 146 (1995).

IV. The New Jersey Employment Agencies Act—*N.J.S.A.* 34:8–43 to –79.

Pursuant to Act, the New Jersey Division of Consumer Affairs is imbued with the responsibility of regulating and overseeing the licensing and registration of private employment agencies and temporary staffing companies. *N.J.S.A.* 34:8–43, –45. The Act bars employment agencies and temporary staffing companies that provide services to New Jersey employees and employers from bringing an action "in any Court of this State for the collection of a fee, charge or commission for the performance of any activities regulated by this act without alleging and proving licensure or registration *as appropriate* at the time the alleged cause of action arose." *N.J.S.A.* 34:8–45(b) (emphasis added).

In analyzing the reach of the Act, I am guided by well-established principles of statutory construction. The most important factor in construing a statute "is generally considered to be the intent of the Legislature, if it can be discerned." *State v. Tischio,* 107 *N.J.* 504, 510, 527 *A.*2d 388 (1987).[7] The words of a statute must be given their common-sense meaning in the context of the entire statute, which should be afforded a "harmonizing construction and read so as to give effect to all of its provisions and to the legislative will." *State v. Channel Home Ctrs.,* 199 *N.J.Super.* 483, 489, 489 *A.*2d 1225 (App.Div.1985).[8] Statutes

---

[7] *See City of Newark v. County of Essex,* 160 *N.J.Super.* 105, 388 *A.*2d 1311 (App.1978), *aff'd,* 80 *N.J.* 143, 402 *A.*2d 916 (1979) (in construing a statute, the court must consider the legislative purpose); *see also Burns v. Belafsky,* 166 *N.J.* 466, 473, 766 *A.*2d 1095 (2001) (the plain language of the statute should be given "its ordinary meaning, absent a legislative intent to the contrary.").

[8] *See Beard v. Aldrich,* 106 *N.J.L.* 266, 149 *A.* 57 (Sup.Ct.1930) (courts must adopt that construction of a statute which reconciles and gives reasonable meaning to all its provisions; *see also Horwitz v. Reichenstein,* 15 *N.J.* 6, 8, 103 *A.*2d 881 (1954) (where a statute is ambiguous, it is the duty of the judiciary "to

must, if reasonably possible, be accorded a construction that is sensible and consonant with reason and good discretion, rather than one that leads to absurd consequences. *Schierstead v. Brigantine,* 29 *N.J.* 220, 230, 148 *A.*2d 591 (1959); *see also Manchester Twp. Bd. of Educ. v. Raubinger,* 78 *N.J.Super.* 90, 187 *A.*2d 614 (App.Div.1963) (statutes should not be interpreted so as to produce an absurd or anomalous result).

■ Unquestionably, the primary purpose of the Act, as well as the Administrative Code containing the implementing regulations,[9] is to regulate the "conduct of all employment agencies providing services to New Jersey employees and employers." *Accountemps v. Birch Tree Grp., Ltd.,* 115 *N.J.* 614, 623, 560 *A.*2d 663 (1989). Its remedial purpose was to alleviate abuses in the employment agency industry. *Id.* at 623, 560 *A.*2d 663. Consequently, compliance with the Act mandates that all entities that "perform any of the functions of an employment agency" be "licensed."[10] *N.J.S.A.* 34:8–52. While *"employment agencies "* must be licensed, *"temporary help service firms "* need only register.[11] *See N.J.S.A.* 34:8–

choose that construction which will carry out the legislative intent of the statute as a whole[.]"); *Cressey v. Campus Chefs, Div. of CVI Serv., Inc.,* 204 *N.J.Super.* 337, 342–43, 498 *A.*2d 1274 (App.Div.1985) (the judiciary is obligated "to respect the legislative intention by interpreting the statute in a common-sense manner which advances the legislative purpose"); *Sutherland Statutory Construction* § 46.05, at 103 (5th ed.1992).

9 Chapter 45B, Title 13 of the New Jersey Administrative Code "implement[s] N.J.S.A. 34:8–43 to –79 and N.J.S.A. 56:8–1.1 and regulate[s] the operation of persons offering, promising, attempting to procure and/or supplying, procuring, obtaining or assisting in procuring or obtaining employment or personnel services or products in the State of New Jersey." *N.J.A.C.* 13:45B–1.1.

10 "License" means a license issued by the Director enabling any person: (1) to carry on the business of an employment agency; and (2) to perform, as an agent of the agency, any of the functions related to the operation of the agency. *N.J.S.A.* 34:8–43.

11 " 'Registration' means a registration issued by the Director enabling any person: (1) to carry on the business of a consulting firm, temporary help service firm, career consulting or outplacement organization." *N.J.A.C.* 13:45B–1.2.

45(b); *see also N.J.S.A.* 56:8–1.1;[12] *Data Informatics v. Ameri-SOURCE Partners,* 338 *N.J.Super.* 61, 71–73, 768 *A.*2d 210 (App. Div.2001) (emphasis added).[13] Under the Act, licensure and/or registration, as appropriate, serves as a condition precedent to any action for fees or enforcement of such agreements within the State. *N.J.S.A.* 34:8–45(b); *Data Informatics, supra,* 338 *N.J.Super.* at 72, 768 *A.*2d 210.

Under the applicable statutory scheme, "employment agency" is defined as any person who, for a fee, charge or commission:

(1) Procures or obtains, or offers, promises or attempts to procure, obtain, or assist in procuring or obtaining employment for a job seeker or employees for an employer; or

(2) Supplies job seekers to employers seeking employees on a part-time or temporary assignment basis who has not filed notification with the Attorney General pursuant to the provisions of section 1 of P.L.1981, c. 1 (C.56:8–1.1); or

(3) Procures, obtains, offers, promises or attempts to procure or obtain employment or engagements for actors, actresses, performing artists, vocalists, musicians or models; or

(4) Acts as a placement firm, career counseling service, or resume service; or

(5) Acts as a nurses' registry.

[*N.J.S.A.* 34:8–43.][14]

---

[12] The Employment and Personnel Services Act also expressly requires that temporary help service firms comply with the provisions of the Consumer Fraud Act, thereby requiring temporary help service firms to register with the State. *N.J.S.A.* 56:8–1.1.

[13] While in *Data Informatics, supra,* the court used a "totality of the circumstances" test in determining that the company there should be deemed an "employment agency," the appellate court added (in *dicta)* that even if it were to accept the company's position that it was only a temporary help service firm (and not an employment agency), it would nevertheless have been precluded from enforcing the non-compete clause since it: (1) did not qualify for the statutory exemption (because it charged a fee for placing her with an employer and inhibited her from becoming employed by others); and (2) failed to *register* as a temporary help service firm. *Id.* at 78, 768 *A.*2d 210. Neither of those disqualifying factors are present in this case. Logic Planet did not charge a fee for placing the defendant, and it was, in fact, *registered* as a temporary help service firm.

[14] An "employer" is defined as "a person seeking to obtain individuals to perform services, tasks, or labor for which a salary, wage, or other compensation

By way of contrast, a "temporary help service firm" includes any person who:

> operates a business which consists of employing individuals directly or indirectly for the purpose of assigning the employed individuals to assist the firm's customers in the handling of the customers' temporary, excess or special work loads, and who, in addition to the payment of wages or salaries to the employed individuals, pays federal social security taxes and State and federal unemployment insurance; carries worker's compensation insurance as required by State law; and sustains responsibility for the actions of the employed individuals while they render services to the firm's customers. A temporary help service firm is required to comply with the provisions of [the Consumer Fraud Act, *N.J.S.A.* 56:8-1-198.] [15]
>
> [*N.J.S.A.* 34:8-43.]

Section 46 of the Act, entitled "Cases where not applicable," expressly exempts certain entities from the provisions of the Act entirely, including, of course, any obligation to register or obtain licensure. One such exemption applies to "temporary help service firms" that *do not:*

> (1) Charge a fee or liquidated charge to any individual employed by the firm or in connection with employment by the firm; [or]
>
> (2) Prevent or inhibit, by contract, any of the individuals it employs from becoming employed by any other person[.]
>
> . . . .
>
> [*N.J.S.A.* 34:8-46(h).]

■ Thus, the novel issue of statutory construction raised in this case, and the chief point of contention between the parties, is the scope of this exemption. While plaintiff concedes that an *unregistered* "temporary help service firm" may not charge a fee or include within its employment contract a liquidated damage

---

or benefits are to be paid." *N.J.S.A.* 34:8–43. A "job seeker" is "any individual seeking employment ... or employment related services or products." *Id.* Although the Act does not provide definitions of "employee" or "placement," the Court in *Data Informatics* explained that: (1) an "employee" is "a person in the service of another under any contract of hire, express or implied, oral or written, where the employer has the power or right to control and direct the employee in the material details of how the work is to be performed;" and (2) "placement" is "[t]he act of finding employment for a person[.]" *Data Informatics, supra,* 338 *N.J.Super.* at 75, 768 A.2d 210.

[15] This is the precise relationship that Logic Planet alleges, and defendant acknowledges, existed between the parties.

clause or a restrictive covenant preventing any of its employees from becoming employed by anyone else (including an end-client), it strenuously asserts that a *registered* "temporary help service firm" is free to do so. Defendant disagrees, and instead insists that even a temporary help service firm must be "licensed" if it seeks to charge a fee, impose a liquidated damage charge, or prevent an employee from becoming employed by any other person, including an end client. Consequently, defendant posits that plaintiff's status as a "temporary help service firm" is legally irrelevant because Logic Planet was statutorily compelled to obtain an employment agency license since its contract contained both non-compete and liquidated damage clauses. I am satisfied that the defendant's interpretation is unsound and inconsistent with the meaning, scope, and requirements of the Act.[16]

Of course, a temporary help service firm that does not charge a fee, or declines to include liquidated damage or non-compete clauses in its employment contract with its employees, is unquestionably exempt from "registration" and need not comply with, nor is it subject to, the provisions of the Act or its prohibitions. But it is equally obvious that had the Legislature intended to mandate licensing for temporary help service firms that wished to include such clauses in their employment contracts, it could easily have accomplished this, either by using parallel language for both categories of business, or simply by doing away with the employment agency/temporary help service firm dichotomy entirely.[17]

---

[16] Since the Act only compels temporary help service firms to be *registered,* it is both illogical and inconsistent with a common sense construction of the statute to conclude that a temporary help service firm must acquire a license when there exists no protocol or procedure for obtaining one. I therefore reject that interpretation as untenable. *See Manchester Twp. Bd. of Educ., supra,* 78 *N.J.Super.* at 90, 187 A.2d 614; *see also State v. Gill,* 47 *N.J.* 441, 444, 221 A.2d 521 (1966) (interpretations leading to absurd or unreasonable results should be avoided).

[17] The Legislature is presumed to be familiar with existing laws and regulations. *Chase Manhattan Bank v. Josephson,* 135 *N.J.* 209, 227, 638 A.2d 1301

Indeed, this point is well illustrated by the specific constraints imposed upon yet a third category of business regulated by the Act—"health care service firms," for which the Department of Consumer Affairs, through its regulations, expressly requires "licensure" as a prerequisite to such service firms charging fees or including liquidated damage clauses in their employment contracts:

A health care service firm shall not ... (2) [c]harge a fee or a liquidated damage charge to any individual employed by the health care service firm or in connection with employment by the firm. If a fee or liquidated damage charge is imposed, the health care service firm shall obtain a license as an employment agency ... (3) [p]revent or inhibit, by contract, any of the individuals it employs from becoming employed by any other person. If the health care service firm charges an individual pursuant to such contract a fee when the individual becomes employed by any other person, *the health care service firm shall obtain a license as an employment agency* .... (emphasis added).

[*N.J.A.C.* 13:45B-13.6(a).]

To suggest that the court should read into the Act a mandate for licensure (which neither the Act nor the Department of Consumer Affairs's implementing regulations call for), is simply too great a leap. Accordingly, Logic Planet's failure to obtain an "employment agency" license does not preclude it from maintaining this lawsuit.

V. Logic Planet's De Facto Status Under the Act Based Upon the Totality of its Conduct

■ Given my conclusion that Logic Planet, as a "registered" temporary help service firm, need not be "licensed" to pursue this litigation, I must still determine whether plaintiff's business may de facto, by its acts or conduct, be "deemed" to be an "employment agency" as a matter of law, thereby subjecting it to the licensure requirement of the Act.

*Data Informatics* is instructive. There, the Court examined the plaintiff company's business activities and concluded that it should

(1994); *Brewer v. Porch,* 53 *N.J.* 167, 174, 249 A.2d 388 (1969); *State v. Federanko,* 26 *N.J.* 119, 129, 139 A.2d 30 (1958).

be deemed an employment agency based on the totality of its conduct, namely that it: (1) arranged the employee's interview with another firm; (2) supplied the employee to the firm; and (3) earned a commission based on a percentage of the employee's wages.[18] *Data Informatics, supra,* 338 *N.J.Super.* at 76, 768 *A.*2d 210.

It is plainly evident that Logic Planet is markedly distinguishable from Data Informatics. Here, the express language of the parties' employment agreement makes clear (and the parties' jointly acknowledge) that Uppala was Logic Planet's employee. Uppala was not a "job seeker" with whom Logic Planet consulted in an effort to place to her with some other employer. Indeed, she already held a $60,000 per year job with plaintiff, and thus was not "seeking" employment or employment related services. The undisputed facts demonstrate that Logic Planet: (1) temporarily placed one of its own contractual employees, Uppala, with one of its own clients; (2) continued to pay her salary; and (3) performed all of the other functions of an employer. The record is devoid of any evidence that would suggest, or from which defendant could persuasively argue, or from which I could reasonably infer based upon the totality of Logic Planet's conduct, that Logic Planet should be deemed an "employment agency."

In light of the foregoing, I am satisfied as a matter of law that Logic Planet is not an "employment agency" under the Act, and as such, it was not compelled to obtain a license prior to instituting this action against its former employee. Rather, as a registered

---

[18] Unlike the defendant in *Data Informatics, supra,* the defendant here, Uppala, *does not dispute* plaintiff's status as a "temporary help service firm." Instead, defendant maintains only that plaintiff's status is irrelevant because it believes that *licensure* is a prerequisite to bringing suit to enforce restrictive covenants or liquidated damage clauses under *either* category of business. Notwithstanding defendant's position in this regard, *Data Informatics* makes clear that I am nonetheless required to examine all relevant circumstances in order to assess, whether by virtue of the totality of its conduct, (when viewed in a light most favorable to the defendant), Logic Planet could be deemed an "employment agency," thereby triggering the need for licensure under the Act.

"temporary help service firm," Logic Planet may pursue its claims.[19]

## VI. Conclusion

For the reasons articulated above, I am satisfied that Logic Planet is not an "employment agency," either under the express wording of the New Jersey Employment Agencies Act or based upon the "totality" of its business conduct, and therefore is exempt from the licensing requirements of the Act. Rather, to pursue the collection of a fee, charge or commission, or to enforce either a liquidated damage clause or restrictive covenant, Logic Planet, as a temporary help service firm, need only be registered, which it is.[20] Accordingly, there is no jurisdictional impediment to Logic Planet maintaining this lawsuit. Plaintiff shall submit an appropriate form of order, incorporating this opinion by reference, under the five-day Rule.

---

[19] Given my ruling that Logic Planet need only be "registered" and not "licensed" to seek enforcement of its restrictive covenant, any contention that such an Amendment would be "futile," is misplaced. *Compare, Notte v. Merchs. Mut. Ins. Co.*, 185 *N.J.* 490, 496, 888 *A.*2d 464 (2006) ("[A] request to amend a pleading will be denied ... if the amended pleading itself is without legal merit, that is, if the amendment as proposed would be futile.") Accordingly, an order granting plaintiff's motion to amend its complaint has been entered simultaneously with my order denying defendant's motion for summary judgment.

[20] *See* n. 4, *supra.*